Docket No. 90776–Agenda 12–September 2001.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GLEN HALL, Appellant.

Opinion filed November 21, 2001.

JUSTICE FITZGERALD delivered the opinion of the court:

The defendant, Glen Hall, pleaded guilty to forgery, and the Vermilion County circuit court placed him on a two-year term of probation conditioned upon, 
inter alia
, his cooperation with substance abuse counseling or treatment recommendations. Less than a year later, the State filed a petition to revoke the defendant’s probation, alleging that he failed to report to the probation office and that he was unsuccessfully discharged from Prairie Center, a substance abuse treatment facility.

On July 23, 1999, at the probation revocation hearing, defense counsel informed the trial court that the defendant would admit the State’s allegations. This exchange followed:

“THE COURT: You are Glen Hall?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you would be admitting allegations in the petition *** which, in effect, allege that you violated the probation order by not reporting to probation since October 26, ’98, and that you were unsuccessfully discharged from the Prairie Center on February 11, ’99?

THE DEFENDANT: Yes.

THE COURT: You’ve had enough time to talk to Mr. Sohn [defense counsel] about these allegations?

THE DEFENDANT: Yes.

THE COURT: Mr. Sohn, have you explained to your client the possible penalties that he faces?

MR. SOHN: Forgery is a Class Two, is it not? No, it’s a Class Three.

[Assistant State’s Attorney]: Three.

MR. SOHN: Yes, we have, your Honor.

THE COURT: Has anybody forced you into coming in and entering into this admission, sir?

THE DEFENDANT: No, Ma’am.

THE COURT: Has anybody made any promises to you in return for your admission?

THE DEFENDANT: No.

THE COURT: Are you under the influence of any drugs or alcohol?

THE DEFENDANT: No.

THE COURT: Taking any prescription medication?

THE DEFENDANT: No.

THE COURT: You know clearly what you’re doing?

THE DEFENDANT: Yes.

THE COURT: It’s a free and voluntary act on your part, sir?

THE DEFENDANT: Yes.

THE COURT: Could I have a factual basis, please.

[Assistant State’s Attorney]: Judge, we’d present testimony from representatives from Prairie Center that on February 11 of this year he was unsuccessfully discharged from the program at Prairie Center.

We’d also present testimony from Jana Arbuckle from the Vermilion County Probation Office that Mr. Hall has not reported as of the date of filing of this petition since October 26, 1998.

THE COURT: Would that be a substantially correct recitation as you understand it?

MR. SOHN: Yes, your Honor.

THE COURT: Do you still wish to admit, Mr. Hall?

THE DEFENDANT: Yes.

THE COURT: I’ll accept your admission, finding it knowingly and voluntarily made. A violation finding will be made. I will reserve the question of revocation of your probation. That means you’re still under the probation order.”

On December 17, 1999, the trial court revoked the defendant’s probation and sentenced him to three years’ imprisonment. The trial court denied a motion to reconsider the defendant’s sentence. The defendant appealed, arguing that the proceeding where he admitted probation violations did not comply with due process. The appellate court disagreed with the defendant, affirming his probation revocation and sentence. No. 4–00–0188 (unpublished order under Supreme Court Rule 23).

We granted the defendant’s petition for leave to appeal. 177 Ill. 2d R. 315(a). We now reverse and remand for further proceedings.

ANALYSIS

Before this court, the defendant again contends that his due process rights were violated because the trial court accepted his admission to probation violations without admonishing the defendant that he had a right to a probation revocation hearing at which he could confront adverse witnesses, and without determining whether the defendant understood the applicable sentencing range. Our review of this legal question is 
de novo
. 
People v. Dameron
, 196 Ill. 2d 156, 162 (2001).

Fairness, the core meaning of our due process guarantees (see U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2), is a flexible concept which calls for procedural safeguards tailored to the demands of a particular legal context. See 
Morrissey v. Brewer
, 408 U.S. 471, 481, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600 (1972). Probation revocation proceedings occur only after a criminal conviction, and a defendant responding to a petition to revoke probation is entitled to fewer procedural rights than a defendant facing trial. See 
People v. Allegri
, 109 Ill. 2d 309, 313 (1985); 
People v. DeWitt
, 78 Ill. 2d 82, 85 (1979); 
People v. Goleash
, 311 Ill. App. 3d 949, 955 (2000). In
 Gagnon v. Scarpelli
, 411 U.S. 778, 786, 36 L. Ed. 2d 656, 664, 93 S. Ct. 1756, 1761-62 (1973), the United States Supreme Court outlined the minimum requirements of due process in a probation revocation hearing: (1) written notice of the claimed probation violation; (2) disclosure of the evidence against the defendant; (3) the opportunity to be heard in person and present testimonial and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral arbiter; and (6) a written statement of the evidence relied upon and the reason for revoking probation. This case, however, does not involve the constitutionality of a probation revocation hearing, but rather the constitutionality of proceedings which resulted in the defendant’s admission to probation violations.

We first addressed what due process means in this context in 
People v. Pier
, 51 Ill. 2d 96 (1972). In 
Pier
, the defendant was convicted of burglary and placed on probation. The State later filed a petition alleging that the defendant had violated his probation. At a hearing on the State’s petition, the defendant admitted his probation violation and was sentenced to 2-15 years’ imprisonment. In a post-conviction petition, the defendant claimed that his admission was induced by an unfulfilled prosecution promise to recommend a lower sentence. The trial court dismissed the defendant’s petition without an evidentiary hearing, and the defendant appealed.

We held that the trial court improperly dismissed the defendant’s petition. 
Pier
, 51 Ill. 2d at 100. Regarding the defendant’s admission, we stated:

“The consequences of a determination that the probation order has been violated are so serious that the appellate courts have surrounded the defendant at a revocation hearing with many of the same due-process safeguards that are accorded to a defendant a[t] a trial to determine his guilt. [Citations.] Since the results of a probation revocation may be a deprivation of liberty and, consequently, as serious as the original determination of guilt, we agree with the holdings of these cases that due process of law requires that a defendant charged with having violated his probation be entitled to a conscientious judicial determination of the charge according to accepted and well recognized procedural methods. *** Justice demands that he also be entitled to the protection of the same due-process requirements which pertain to pleas of guilty when he waives his right to a judicial determination of the charge that he violated his probation and confesses or admits the charges of the revocation petition. If he does so in reliance upon an unfulfilled promise by the State’s Attorney, then his confession or admission to the charge is not voluntary for the same reason that a plea of guilty entered in reliance upon an unfulfilled promise of the State’s Attorney is not voluntary.” 
Pier
, 51 Ill. 2d at 99-100.

Two years later, in 
People v. Beard
, 59 Ill. 2d 220 (1974), we again addressed the due process requirements for admissions to probation violations. The defendants in consolidated cases both were charged with violating the terms of their probation. Both defendants admitted probation violations, and both were sentenced to imprisonment. The defendants appealed, claiming that they were denied due process because they did not receive warnings comparable to the admonitions required under Supreme Court Rule 402 (see 177 Ill. 2d R. 402) for defendants pleading guilty.

We reviewed 
Pier
 and limited its broad language to the facts of that case:

“We cannot subscribe to the broad constitutional basis which defendants seek to engraft upon our decision in 
People v. Pier
. *** In 
People v. Pier
 we did not consider the applicability of Rule 402 upon probation revocation proceedings. We merely expressed the view that due process required that a defendant’s admission must be voluntarily made.” 
Beard
, 59 Ill. 2d at 225.

 We concluded that due process concerns did not necessitate Rule 402 admonitions for defendants admitting probation violations. 
Beard
, 59 Ill. 2d at 226-27. See also 
People v. Tufte
, 165 Ill. 2d 66, 75 (1995) (Supreme Court Rule 605(b), governing admonitions to defendants about rights on appeal, does not apply to defendants who admit violations of conditional discharge).

Our appellate court has struggled to reconcile 
Pier
 and 
Beard
. See, 
e.g.
, 
People v. Butcher
, 288 Ill. App. 3d 120, 122 (1997). In 
People v. Followell
, 165 Ill. App. 3d 28, 30-31 (1987), the appellate court quoted at length from 
Pier
 before concluding:

“Although the trial court need not give all of the admonitions contained in Supreme Court Rule 402 [citation] prior to accepting an admission to a petition to revoke probation [citation to 
Beard
], we believe that in order to protect a defendant’s due process rights, and to make a conscientious judicial determination of the charge, the court must at least determine that the defendant knows what the specific allegations in the petition are, that he knows that he has a right to a hearing with counsel present, that he is not making the admission on the basis of any promises or coercion, and that he understands the consequences of his admission.”

See also 
People v. Foehrer
, 197 Ill. App. 3d 754, 755-56 (1990).

In the present case the appellate court correctly observed that “Illinois law regarding due process in the context of probation revocation proceedings is not well defined.” After reviewing relevant case law, the appellate court stated that a fact-based approach to determining due process standards in the context of admissions to probation violations “may not be preferable, for comprehensive adherence to the considerations enumerated in 
Followell
 carries the virtue of ensuring consistency and uniformity within our judicial system.” The appellate court, however, ultimately held that the defendant’s admission met due process requirements: “[O]ur reading of the entire record here does not convince us that the instant proceedings were fundamentally deficient or unfair ***.”

Although we disagree with the conclusion reached by the appellate court in this case, we agree that 
Followell
 provides a suitable framework for protecting defendants’ due process rights. 
People v. Barker
, 62 Ill. 2d 57, 59 (1975), and 
People v. Baker
, 94 Ill. 2d 129, 134 (1983), where we held that a waiver of counsel in a probation revocation proceeding is invalid unless the court admonishes the defendant as to the purpose of the proceeding and the nature of the alleged violation, as well as his rights of confrontation, cross-examination, and representation by counsel, provide additional guidance. In an effort to clarify the meaning of due process in this context, we now hold that before accepting a defendant’s admission to a probation violation, the trial court should admonish the defendant to determine whether:

(1) the defendant understands the specific allegations in the State’s petition to revoke probation;

(2) the defendant understands that he has the right to a hearing with defense counsel present at which that the State must prove the alleged violation, and that he has the rights of confrontation and cross-examination at such a hearing;

(3) the defendant’s admission is voluntarily made and not made on the basis of any coercion or promises, other than any agreement as to the disposition of his case;

(4) the defendant understands the consequences of his admission or the sentencing range for the underlying offense; and

(5) a factual basis exists for the admission.

These warnings appropriately balance the interests of the State with the liberty of defendants, and they also comport with the language of the probation revocation statute. See 730 ILCS 5/5–6–4(b) (West 1998) (the defendant has the right to a hearing on the alleged probation violation); 730 ILCS 5/5–6–4(c) (West 1998) (at a probation revocation hearing, the State bears the burden of proof, and the defendant has the rights of confrontation, cross-examination, and representation by counsel); see 
People v. Bell
, 296 Ill. App. 3d 146, 152 (1998).

Here, the trial court’s exchange with the defendant and defense counsel touched upon some of the requisites of due process which we have identified. The court initially determined whether the defendant understood the allegations of the State’s petition. The court also determined that the defendant’s admission was voluntary and was not prompted by prosecution promises. Defense counsel indicated that he had discussed the sentencing range with the defendant, and in accepting the defendant’s guilty plea, the court previously had advised the defendant of the possible penalty for forgery. See 
People v. Cox
, 197 Ill. App. 3d 239, 244-45 (1990). Finally, the State offered a factual basis for the defendant’s admission.

The court, however, did not advise the defendant of his right to a probation revocation hearing or the specifics of such a hearing. This deficiency denied the defendant due process. See 
People v. Marion
, 275 Ill. App. 3d 494, 496 (1995) (the defendant’s admission to a probation violation did not satisfy due process where the trial court did not admonish the defendant that by her admission she was waiving her right to present and confront witnesses); 
People v. Hoyt
, 129 Ill. App. 3d 331, 337 (1984) (the trial court afforded the defendant minimum due process when, prior to accepting the defendant’s admission to a probation violation, it admonished the defendant that she was waiving her right to a hearing).

CONCLUSION

For the reasons we have discussed, we reverse the judgments of the appellate and circuit courts and remand to the circuit court for further proceedings.

Judgments reversed;

cause remanded.

JUSTICE GARMAN took no part in the consideration or decision of this case.