No. 02-188

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 239

STATE OF MONTANA,

      Plaintiff and Respondent,

v.

DANIEL FELIX FINLEY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and for the County of Lake, Cause No. DC 98-104
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Kristina Guest, Appellate Defender Office, Helena, Montana

      For Respondent:

          Mike McGrath, Montana Attorney General, Jennifer Anders, Assistant
Montana Attorney General, Helena, Montana; Robert J. Long, Lake County
Attorney, Polson, Montana

Submitted on Briefs: October 31, 2002

Decided: September 11, 2003

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1	Daniel Felix Finley (Finley) appeals the re-revocation of his suspended sentence by the Twentieth Judicial District Court, Lake County, which occurred three months after Finley's initial revocation proceedings were declared void under the authority of *State v. Goebel*, 2001 MT 73, 305 Mont. 53, 31 P.3d 335, and *State v. Giddings*, 2001 MT 76, 305 Mont. 74, 29 P.3d 475. We affirm in part and reverse in part.

¶2	We frame the issues for appeal as follows:

¶3	1. Does this Court have jurisdiction to hear Finley's claim that the District Court lacked jurisdiction to conduct re-revocation proceedings?

¶4	2. Did the District Court lack jurisdiction to conduct re-revocation proceedings after the State held Finley for more than 72 hours without setting bail or holding an intervention hearing?

¶5	3. Did the District Court violate Finley's due process rights by re-revoking his suspended sentence when Finley did not admit violating the conditions of probation before the court?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6	The District Court sentenced Finley to a ten-year term at Montana State Prison, with all but 90 days suspended, for entering the bar at the KwaTaqNuk Lodge in Polson, Montana after hours and stealing several bottles of liquor. Almost two years after the incident, the Lake County Attorney petitioned to revoke Finley's suspended sentence based on a probation officer's report that alleged Finley used drugs and alcohol and failed to report a change of address after his eviction from a homeless shelter. Arrested on a bench warrant on September 8, 2000, Finley admitted at his September 13, 2000 sentence revocation

2

hearing that he violated certain conditions of his probation. The court resentenced him to a ten-year term at Montana State Prison, with only five years suspended and credited him for time served, but not for elapsed probationary time.

¶7 In May 2001, Finley filed a *pro se* petition for Writ of Habeas Corpus with this Court, requesting that the District Court's revocation action be voided because Finley had not been provided a probable cause hearing within 36 hours of his arrest for probationary violations as required by § 46-23-1012(4), MCA (1999), and this Court's holdings in *Goebel* and *Giddings*. While Finley's petition was pending, the Lake County Attorney filed a petition to revoke Finley's probation on August 29, 2001, and the District Court ordered that Finley be held at the prison without bond. The court took judicial notice of the findings of Finley's prior revocation proceeding. A week later, the court issued a bench warrant for Finley's arrest on these same probationary violations; set bail at $20,000; and had Finley served with the warrant in prison on September 12, 2001. According to the record, the County Attorney filed another petition to revoke with the District Court on September 19, 2001.

¶8 On October 11, 2001, this Court granted *habeas* relief and ordered the State to release Finley from custody. *State v. Finley*, Order No. 01-367 (October 11, 2001). Finley was returned to the Lake County Jail on the warrant and appeared before the District Court on December 5, 2001. Denying all allegations that he had violated the terms of his probation, Finley received court-appointed counsel.

¶9 After several continuances, Finley's re-revocation hearing was held on January 30, 2002. At the outset, defense counsel informed the District Court that Finley had changed

3

his mind and had decided to admit to the alleged probation violations. The court accepted the admission and resentenced Finley to a ten-year prison term with five years suspended and credit for prior incarceration time. Finley immediately asked to withdraw his admission. The court denied the request. Finley filed a timely appeal *pro se* and now is represented before this Court by the Appellate Defender.

## STANDARD OF REVIEW

¶10 Whether a court has subject matter jurisdiction raises a question of law. *State v. Boucher*, 2002 MT 114, ¶ 10, 309 Mont. 514, ¶ 10, 48 P.3d 21, ¶ 10. Whether a court violated a probationer's constitutional right of due process also involves a question of law and our review is plenary. *In re Mental Health of K.G.F.*, 2001 MT 140, ¶ 17, 306 Mont. 1, ¶ 17, 29 P.3d 485, ¶ 17 (citing *Pickens v. Shelton-Thompson*, 2000 MT 131, ¶¶ 7-8, 300 Mont. 16, ¶¶ 7-8, 3 P.3d 603, ¶¶ 7-8). We review a district court's decision to revoke a suspended sentence to determine whether the court abused its discretion. *State v. Lee*, 2001 MT 176, ¶ 8 , 306 Mont. 173, ¶ 8 , 31 P.3d 998, ¶ 8 (citing *State v. Lindeman* (1997), 285 Mont. 292, 302, 948 P.2d 221, 228).

## Issue 1.

¶11 *Does this Court have jurisdiction to hear Finley's claim that the District Court lacked jurisdiction to conduct re-revocation proceedings?*

¶12 The State contends that Finley failed to preserve an appellate claim that the District Court lacked the authority to re-revoke Finley's suspended sentence by neglecting to raise a jurisdictional claim or objection before the trial court. The State implores this Court to

reconsider our holding in *Giddings* and argues that the only proper remedy for a court's revocation of probation without authority is dismissal of the petition and not the voiding of prior proceedings. However, the State fails to support its quarrel with the *Giddings* remedy by any authority whatsoever.

¶13 Jurisdiction is the power of a court to hear and determine an action and to make orders and render judgment as the law authorizes. *Rehearing of State v. Goebel and State v. Giddings,* 2001 MT 155, ¶ 30, 306 Mont. 83, ¶ 30, 31 P.3d 340, ¶ 30 (citing *State v. Moorman* (1996), 279 Mont. 330, 336, 928 P.2d 145, 148). The issue of subject matter jurisdiction cannot be waived and may be raised by a party, or by the court itself, at any stage of a judicial proceeding. *Giddings*, ¶ 15 (citations omitted). For example, the *Giddings* probationer, successfully challenged the jurisdiction of the district court on appeal, even though he raised no objection in the court below. We later observed that the State's failure to comply with the procedural requirements of § 46-23-1012(4), MCA (1999), is a jurisdictional error that results in the voiding of the prior proceeding *ab initio* upon reversal. *Rehearing of Goebel and Giddings,* ¶ 30. We also explicitly upheld re-revocation proceedings under the retroactive provisions of § 46-23-1012, MCA (2001). *Rehearing of Goebel and Giddings,* ¶ 30.

¶14 The State acknowledges that Finley's appeal challenges the District Court's subject matter jurisdiction on the grounds that the State allegedly failed to comply with the procedural safeguards of § 43-23-1012, MCA. Because subject matter jurisdiction may be raised at any time by any party, we hold that the State's challenge to Finley's appeal on the

5

grounds that Finley failed to raise the issue before the trial court is without merit. Contrary to the State's contention that dismissal of the State's petition is the only proper remedy when a court revokes a probationer's suspended sentence without the authority to do so, the procedural remedy available to the State is to re-file a revocation petition as if the voided prior proceedings had never occurred. Therefore, we decline the State's invitation to reconsider our holding in *Giddings*.

**Issue 2.**

¶15 *Did the District Court lack jurisdiction to conduct re-revocation proceedings after the State held Finley for more than 72 hours without setting bail or holding an intervention hearing?*

¶16 The District Court issued a hold order on August 29, 2001, directing prison officials to detain Finley without bail on the basis of findings made at the September 13, 2000 sentence revocation hearing at which Finley admitted violating the conditions of his probation. Subsequently, this Court voided that September 2000 hearing *ab initio* due to the State's failure to comply with § 46-23-1012, MCA (1999). Finley argues that the District Court was precluded as a matter of law from taking judicial notice of the results of the voided proceeding and that the August 29, 2001 hold order that initiated his re-revocation proceedings was unlawful. Moreover, no intervention hearing was held and no bail was established within 72 hours of the hold order. Finley maintains that the State failed to comply with the jurisdictional prerequisites of § 46-23-1012(3), MCA (2001), which deprived the District Court of authority to hold any further re-revocation proceedings.

¶17 The State acknowledges that the findings of the voided prior revocation hearing

6

served as the basis for the District Court's hold order. However, the State argues that the hold order bears no relevance to subsequent revocation proceedings. According to the State, Finley remained lawfully in custody until this Court granted *habeas* relief on October 11, 2001. Prior to Finley's release from prison, the District Court issued and served a bench warrant for Finley's arrest on the original, alleged probation violations. The State maintains that lawful re-revocation proceedings were initiated when the court issued the warrant and set bail at $20,000. Because Finley was arrested on the warrant upon his release from prison on October 11, 2002, the State contends that further proceedings came under subsection (1) of § 46-23-1012, MCA (2001), which requires no intervention hearing.

¶18 Section 46-23-1012, MCA (2001), provides in pertinent part:

(1) At any time during probation, if a probation and parole officer reasonably believes that the probationer has violated a condition of probation, a court may issue a warrant for the arrest of the probationer or a county attorney may issue a notice to appear to answer to a charge of probation violation. The notice must be personally served upon the probationer. The warrant must authorize law enforcement officers to return the probationer to any suitable detention center.

. . . .

(3) A probation and parole officer may authorize a detention center to hold a probationer arrested under this section without bail for 72 hours. Within 72 hours following the probationer's detention, the probation and parole officer shall:

(a) authorize the detention center to release the probationer;

(b) hold an intervention hearing pursuant to 46-23-1015; or

(c) arrange for the probationer to appear before a magistrate to set bail . . .

. . .

(4) If the probationer is detained and bond is set, the probation and parole officer shall file a report of violation within 10 days of the arrest of the probationer.

(5) After the probation and parole officer files a report of violation, the court may proceed with revocation of probation in the manner provided in

7

46-18-203.

¶19 The State explains on appeal that the August 2001 hold order was issued in anticipation of this Court granting *habeas corpus* relief in accord with our holding in *Giddings*. All parties now agree that the District Court was incorrect as a matter of law to take judicial notice of the findings of Finley's September 13, 2000 sentence revocation proceeding that was later determined to be void *ab initio.* All parties also concur that the hold order was not a legal means for continuing Finley's incarceration. In any event, Finley remained in custody under his September 13, 2000 resentencing until this Court granted *habeas* relief on October 11, 2001, and voided the prior revocation proceeding in its entirety.

¶20 Whether the procedures of § 46-23-1012(1), MCA, or the alternate requirements of § 46-23-1012(3), MCA, govern this case turns on the question of how Finley's re-revocation proceedings were initiated. In *Gonzales v. Mahoney*, 2001 MT 259, 307 Mont. 228, 37 P.3d 653, we explained that when a probationer is formally served with a bench warrant under § 46-23-1012(1), MCA, the State is required to bring the probationer before the court "without unnecessary delay." *Gonzales*, ¶ 11 (citing § 46-18-203, MCA). On the other hand, when a probation officer authorizes the arrest and detention of a probationer under § 46-23-1012(3), MCA, an intervention hearing must be held or bail set within 72 hours.

¶21 Finley distinguishes the circumstances of his re-revocation proceedings from those in *Gonzales* by arguing that the August 29, 2001 hold order launched the re-revocation action against him and the State was required to hold an intervention hearing or set bail

within 72 hours. The State counters that the warrant for Finley's arrest was the proper and actual trigger for re-revocation proceedings. The State recounts that the court issued the warrant on September 7, 2001, in response to the conclusion reached by this Court that a hold order grounded upon the findings of an invalid proceeding was unlawful. *See Waterman v. State*, Order No. 01-368 (September 6, 2001). Since the court issued the warrant and set bail, no intervention hearing was needed, according to the State. We also note that the Lake County Attorney re-filed the petition to revoke on September 19, 2001, and that neither party mentions this filing on appeal.

¶22 Lawful re-revocation proceedings cannot be initiated by an unlawful hold order that took notice of admissions made during an invalidated revocation proceeding. Although the record does not show that the District Court acted to void the hold order, the order was given no force or effect in subsequent proceedings. Although the court could only issue a warrant on the basis of a finding of probable cause and without considering evidence of probation violations presented during prior revocation proceedings, the record is silent regarding the court's probable cause finding. However, Finley does not contest the warrant's validity on appeal. Therefore, we hold that lawful re-revocation proceedings were initiated by warrant in this case, which required the State to comply with § 46-23-1012(1), MCA.

¶23 After this Court ordered Finley's release on October 11, 2001, Finley was immediately arrested and detained at the prison on the warrant until his removal to Lake County. Following a number of continuances, Finley was brought before the District Court on December 5, 2001. He denied the allegations and requested court-appointed counsel.

9

The re-revocation hearing was held on January 30, 2002, and Finley does not contend that the time period between his arrest and the hearing involved any "unnecessary delay." Therefore, because the State appears to have complied with the provisions of § 46-23-1012, MCA, we conclude that the District Court had jurisdiction to conduct the re-revocation hearing.

## Issue 3.

¶24 *Did the District Court violate Finley's due process rights by re-revoking his suspended sentence when Finley did not admit violating the conditions of probation before the court?*

¶25 Finley claims that the District Court denied him due process by finding him guilty of probationary violations on the sole basis of his attorney's representations. Finley asserts that he never admitted any alleged violations before the court and never waived his right to a revocation hearing. The State counters that Finley failed to refute his counsel's statement that Finley admitted violating the conditions of his probation. Therefore, the court was correct to accept defense counsel's statements as true and revoke Finley's suspended sentence.

¶26 The following exchange occurred between defense counsel and the District Court at the opening of the re-revocation hearing on January 30, 2002:

> MR. VERNAY: Your Honor, if it please the Court, prior counsel entered denials of the allegations in the probation violation. After my visit with Mr. Finley over this past weekend, he has agreed in essence to change his plea and withdraw his denials and admit to the allegations as set forth in the probation violation report dated August 16th of 2000.
>
> THE COURT: The change is accepted by the Court. And the entry of the

10

admissions to the allegations of the report of violation dated August 16, 2000 are sufficient now to satisfy the State's burden under its petition and the defendant's suspended sentence is revoked.

¶27 The District Court then asked whether the parties were prepared to proceed to sentencing and received no objection. Finley testified briefly about his medical condition and the difficulty he had experienced in obtaining treatment in prison for his injured eye. Without engaging in a colloquy with Finley, the court then resentenced him to a ten-year term with five years suspended. Finley then declared: "I'd like to withdraw my guilty plea." The court denied the request; ordered the county attorney to prepare the order; and remanded Finley to the custody of the Department of Corrections.

¶28 Whether a court violates a probationer's constitutional rights by revoking a suspended or deferred sentence based only on the statements of counsel is an issue of first impression in Montana. Finley draws our attention to authority from other jurisdictions that addresses the meaning of due process in the context of revocation proceedings. The State argues that no constitutional provision requires a court to obtain record admissions from a probationer at a revocation hearing. However, the State cites no support for this proposition and summarily fails to offer countervailing authority regarding Finley's due process concerns.

¶29 The Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution protect the substantive and procedural rights of persons faced with deprivation of life, liberty or property by the government. Revocation of a suspended or deferred sentence can adversely implicate a probationer's liberty interests as seriously as the original determination of guilt. However,

11

sentence revocation is a civil proceeding, thus, a probationer does not enjoy the same constitutional guarantees as a defendant facing criminal prosecution. *Morrissey v. Brewer* (1972), 408 U.S. 471, 480, 92 S. Ct. 2593, 2600, 33 L.Ed.2d 484; *State v. Oppelt* (1979), 184 Mont. 48, 53, 601 P.2d 394, 397 (citation omitted). The foundation of the guarantee of due process is fairness, which calls for safeguards tailored to the demands of the particular legal context of probation revocation. *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 782, 93 S. Ct. 1756, 1760, 36 L.Ed.2d 656.

¶30 Montana law guarantees a hearing before the sentencing court for each probationer subject to a revocation petition. Section 46-18-203, MCA. Prior to a revocation hearing, statutory due process requirements include the following:

> Without unnecessary delay, the offender must be brought before the judge, and the offender must be advised of:
>
> (a)  the allegations of the petition;
> (b)  the opportunity to appear and to present evidence in the offender's own behalf;
> (c)  the opportunity to question adverse witnesses; and
> (d)  the right to be represented by counsel at the revocation hearing pursuant to Title 46, chapter 8, part 1.

Section 46-18-203(4), MCA. Moreover, the prosecution must prove that the probationer violated the conditions of his suspended or deferred sentence by a preponderance of the evidence. Section 46-18-203(6), MCA.

¶31 The United States Supreme Court elaborated the following minimum due process requirements for a probation revocation hearing: (1) written notice of the claimed probation violation; (2) disclosure of the evidence against the defendant; (3) the opportunity to be

12

heard in person and present testimonial and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral arbiter; and (6) a written statement of the evidence relied upon by the arbiter and the reason for revoking probation. *Gagnon,* 411 U.S. at 786, 93 S.Ct. at 1761-62, 36 L.Ed.2d 656 (citing *Morrissey,* 408 U.S. at 489, 92 S. Ct. at 2604, 33 L.Ed.2d 484).

¶32    Alternatively, a probationer may waive his or her right to a full revocation hearing and admit the alleged probationary violations or accept favorable relief granted by the court. Section 46-18-203(5)(a) and (b), MCA. However, as we have stated repeatedly, "this Court will not engage in presumptions of waiver; any waiver of one's constitutional rights must be made specifically, voluntarily, and knowingly." *State v. Bird*, 2001 MT 2, ¶ 35, 308 Mont. 75, ¶ 35, 43 P.3d 266, ¶ 35 (citing *Park v. Sixth Jud. Dist. Court*, 1998 MT 164, ¶ 36, 289 Mont. 367, ¶ 36, 961 P.2d 1267, ¶ 36). *See also*, *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461; *State v. Lucero* (1968), 151 Mont. 531, 538, 445 P.2d 731, 735. For waiver of a fundamental right to be recognized by the courts, the waiver must be informed, intelligent and voluntary. *State v. Allison* (1944), 116 Mont. 352, 360, 153 P.2d 141, 145.

¶33    In the context of a criminal prosecution, this Court has stated that a defendant's attorney cannot waive a defendant's fundamental rights as a matter of convenience. *State v. Tapson*, 2001 MT 292, ¶ 38, 307 Mont. 428, ¶ 38, 41 P.3d 305, ¶ 38. Before accepting a waiver of rights, a court must ascertain on the record that the criminal defendant has been apprised of his rights, understands what rights he is waiving and waives those rights

13

voluntarily. *Tapson*, ¶ 27. Given the liberty interests at stake during revocation proceedings, we hold that the constitutional guarantee of due process demands that waiver of a probationer's right to a revocation hearing must also be knowing, intelligent and voluntary. Moreover, courts must not presume waiver by a probationer based on the representations of counsel. Rather, the court must obtain a reviewable, on-record waiver from the probationer.

¶34     In the case before us, Finley's attorney told the District Court that Finley had decided to withdraw his plea of not guilty and admit to the probation violations alleged to have occurred during the summer of 2000. The court did nothing to ascertain that Finley understood the consequences of making an admission before the court. Neither did the court inform Finley he had the right to remain silent and not incriminate himself; that he had the right to confront the witnesses against him face to face; and that he had the right to require the prosecution to prove the allegations against him by a preponderance of the evidence. Nor did the court inquire of Finley whether he knowingly, intelligently and voluntarily waived his due process rights before the court accepted as fact the admission reported by defense attorney. When Finley asked to withdraw his guilty plea only minutes later, the court denied the request without determining whether Finley had good reason for withdrawing the admissions entered by his attorney. Moreover, the fact that Finley sought to withdraw the admissions immediately upon resentencing indicates that he might not have been aware of the consequences of an admission. Since the record fails to demonstrate that Finley knew that he waived his right to confront and cross-examine the witnesses against him and to have the State prove that he had violated the terms of his probation by a

14

preponderance of the evidence at a revocation hearing, it is impossible for this Court to ascertain on appeal that Finley knowingly, intelligently and voluntarily waived his due process rights.

¶35    We conclude that the District Court committed reversible error by accepting the representation of defense counsel that Finley admitted to all allegations without engaging in a colloquy with Finley.  In so doing, the court overlooked admonishing Finley regarding his constitutional rights; neglected to ascertain that Finley knew the consequences he faced by admitting to the alleged probation violations; failed to determine that Finley voluntarily waived his right to a revocation hearing as an intelligent choice among the alternatives available; committed the constitutional error of accepting a waiver of Finley's right to a hearing based on presumption only; and failed to establish a factual basis for the probationary violations alleged.

¶36    The State does not concede that District Court error in this case requires reversal and argues that Finley admitted violating the terms and conditions of his probation at his initial revocation hearing and that this earlier admission provides the legal basis for re-revocation. The State contends that Finley's earlier admission satisfies any constitutional requirement that there be an on-record admission during Finley's second revocation hearing and cites *State ex rel. Mazurek v. District Court*, 2000 MT 266, 302 Mont. 39, 22 P.3d 166, for the proposition that prior testimony under oath obviates the need for further direct testimony. Finley retorts that because the State was entitled to proceed against him anew as if no prior revocation proceeding had occurred, the State cannot then turn around and use testimony

15

from an invalidated proceeding to support its position at a re-revocation hearing.

¶37 We agree with Finley that testimony presented at a voided proceeding may not be invoked as evidence during a later proceeding. However, the record in this case does not clearly show that the District Court actually took notice of Finley's prior testimony from the voided initial revocation hearing. The court stated at re-revocation that "the entry of the admissions to the allegations of the report of violation dated August 16, 2000, are sufficient now to satisfy the State's burden under its petition . . ." This statement signifies that the court either accepted as sufficient the representations by defense counsel that Finley admitted to probationary violations or took notice of the entry of Finley's admissions at the prior voided hearing. In either event, Finley's constitutional due process rights were abrogated by the court's failure to insure that Finley knowingly, intelligently and voluntarily waived his right to a re-revocation hearing. We reverse and remand.

**CONCLUSION**

¶38 Although Finley's challenge to the District Court's subject matter jurisdiction may be raised on appeal, we conclude that the challenge lacks merit because the State established court jurisdiction by complying with the procedural requirements of § 46-23-1012, MCA. However, the court accepted a wavier of Finley's right to a re-revocation hearing without ascertaining that Finley, himself, knowingly, intelligently and voluntarily waived his right to due process. For this reason, we reverse and remand.

¶39 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

16

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice James C. Nelson specially concurs.

¶40     The Illinois Supreme Court recently addressed an issue similar to that raised by Finley and outlined sensible procedural safeguards to ensure that a probationer's constitutional rights are respected in sentence revocation hearings. In *People v. Hall* (Ill. 2001), 760 N.E.2d 971, the Illinois Court reviewed a case in which the sentencing court failed to admonish a probationer regarding the consequences of his admission before the court. In that case, neither the probationer nor the prosecution knew the sentencing parameters available to the court at the time the probationer admitted violating a condition of his probation. To clarify the meaning of due process in the context of a revocation hearing, the Illinois Supreme Court held that a trial court must admonish a probationer before accepting an admission to a probation violation, in order to determine whether:

> (1) the probationer understands the specific allegations in the State's petition to revoke probation;
>
> (2) the probationer understands that he has the right to a hearing with defense counsel present at which the State must prove the alleged violation, and that he has the rights of confrontation and cross-examination at such a hearing;

(3) the probationer's admission is voluntarily made and not made on the basis of any coercion or promises, other than any agreement as to the disposition of his case;

(4) the probationer understands the consequences of his admission or the sentencing range for the underlying offense; and

(5) a factual basis exists for the admission.

*Hall,* 760 N.E.2d at 975.

¶41     The admonishments outlined by the Illinois Supreme Court comport with the procedural safeguards of § 46-18-203, MCA, and work to balance the interests of the State to ensure compliance with the terms and conditions of probation and the liberty interests of the probationer.  Clearly, justice would be better served and a probationer's procedural and substantive due process rights better protected by our district courts obtaining assurances that address each of the five points set forth in *Hall* to create a reviewable record that the defendant was advised of his rights before the defendant waives any of those rights and prior to the court accepting an admission.

¶42     I suggest that district courts adopt the *Hall* approach.  The extra two minutes spent in obtaining the five assurances will obviate appeals such as the one at bar.


/S/ JAMES C. NELSON