DA 20-0060

FILED

08/10/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0060

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 198

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MICHAEL LEE CAMERON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 16-0048
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Haley Connell Jackson, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

            Scott D. Twito, Yellowstone County Attorney, Ingrid Rosenquist, Deputy County Attorney, Billings, Montana

                   Submitted on Briefs:  June 2, 2021

                          Decided:  August 10, 2021

Filed:

_____
                     Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1      Defendant and Appellant Michael Lee Cameron (Cameron) appeals from the November 15, 2019 Order Denying Defendant's Pro Se Motion to Vacate and Challenge to Jurisdiction and the January 3, 2020 Order of Revocation and Imposition of Sentence issued by the Thirteenth Judicial District Court, Yellowstone County, which revoked his previous sentence and sentenced him to the Montana Department of Corrections (DOC) for a term of two years and 322 days for Failure to Register as a Sexual Offender, a felony.

¶2      Cameron raised several issues on appeal; however, we need only address the following dispositive issue:

> *Whether the State's two-year delay in bringing Cameron to Montana to appear before a judge in his revocation proceeding violated Cameron's right to due process.*

¶3      We reverse and remand with instructions to vacate Cameron's sentence and dismiss the State's petition to revoke with prejudice.

### FACTUAL AND PROCEDURAL BACKGROUND

¶4      In 2009, Cameron was sentenced on a conviction of Rape 3, a felony, in New York state. Cameron was ordered to serve nine months at the Erie County Correctional Facility and additionally required to register as a sex offender. In 2010, Cameron moved to Montana. He registered as a sex offender in Yellowstone County on July 15, 2010. Cameron updated his address in 2012, but was not found at that address in 2013. Officials attempted to locate Cameron in Billings several times in 2013, but were unable to do so. Ultimately, on January 21, 2016, Cameron was charged with a single count of Failure to Register as a Sexual Offender. Cameron pled guilty to the offense on April 8, 2016, and

2

was sentenced in open court on October 18, 2016. The District Court's written judgment, sentencing Cameron to three years with the DOC, all suspended, was issued on November 9, 2016.

¶5 On November 15, 2016, the State filed a Petition and Notice for Revocation of Sentence and Affidavit in Support, alleging Cameron violated the terms of his probation. This petition was dismissed upon motion of the State on January 31, 2017. On April 14, 2017, the State filed another Petition for Revocation of Sentence and Affidavit in Support, alleging Cameron violated the terms of his probation and absconded from supervision. The District Court issued a bench warrant on April 17, 2017.

¶6 On July 8, 2017, Cameron was pulled over for a traffic stop in New York. Because of the outstanding warrant in Montana, New York initiated fugitive from justice proceedings against Cameron in state court. On July 17, 2017, Cameron signed a Waiver of Extradition form before a Monroe County judge and waived his extradition back to Montana. Shortly before Cameron was set to return to Montana, the Acting United States Attorney filed a Petition and Order for Writ of Habeas Corpus Ad Prosequendum (the writ) on July 25, 2017, which was granted by a United States Magistrate Judge that same day. The Petition sought an order which would allow the U.S. Marshals Service to take Cameron into their custody to appear in federal court on July 26, 2017, before being "returned to his place of confinement." A Senior Inspector for U.S. Marshals Service then filed a Criminal Complaint in the United States District Court for the Western District of New York on July 26, 2017, alleging that Cameron violated 18 U.S.C. § 2250(a) by failing to register as a sex offender when he traveled from Montana to New York.

3

¶7     Cameron then appeared before the U.S. District Court on July 26, 2017, for a hearing on the federal complaint. The government moved to detain Cameron on the basis of his being a flight risk and a danger to the community. Cameron requested, and was granted, a *Coonan* Order[1] because Cameron would not be eligible for release due to being in state custody on the Montana warrant and was in federal court pursuant to the writ. A *Coonan* Order, as explained by the federal court at the hearing, reserved Cameron's rights to federal bail, he could assert them at any time, and if it became clear the only thing holding him was the federal charge, the court would schedule a bail hearing right away if Cameron wanted.[2] At the hearing, the parties and the court recognized Cameron was in primary state custody, had only temporarily been placed in federal custody pursuant to the writ, and would be returned to state custody immediately after the hearing. The government represented Cameron was planned to be picked up and returned to Montana in two days. At the end of the hearing, the court informed the parties Cameron was going to be returned to state custody pursuant to the writ and noted the parties could apply, and the court would

---

[1] *United States v. Coonan*, 826 F.2d 1180 (2d Cir. 1987).

[2] In *Coonan*, the Second Circuit Court of Appeals held that:

> [W]here a defendant is otherwise incarcerated, and where defense counsel adopts a position that bail is not an issue and that an immediate hearing is unnecessary, the government is not precluded from seeking pretrial detention, even if the hearing thereon is held more than five "statutory" days after the initial appearance. While a defendant is of course free at any time, even while in state custody, to bring on the detention hearing in order to clarify his federal status, the government is not barred from seeking detention when he does so. Moreover, the government must see that the hearing is timely held when a defendant's state-custody status changes so that his liberty interest becomes viable.

*Coonan*, 826 F.2d at 1185.

sign an order, to keep him in federal custody "if both sides consent to it." No such application to keep Cameron in federal custody was ever filed in the federal court.

¶8 On July 27, 2017, following Cameron's return to state custody after the federal hearing, the Montana prosecutor emailed an assistant district attorney with the Monroe County, New York, District Attorney's Office, and notified him that Montana was requesting its request to transport Cameron back to Montana "be cancelled due to the federal hold that was recently placed on Mr. Cameron." The New York state court then issued an order releasing Cameron from the fugitive hold that same day. Also on July 27, 2017, the Monroe County assistant district attorney emailed officials in New York and Montana that he "was notified this morning that a federal detainer was lodged against [Cameron,] and therefore authorities from Montana have cancelled their extradition request for now." The email included a copy of the New York state court's fugitive release order. On August 9, 2017, the Yellowstone County Sheriff, through its Warrants and Extraditions officer, sent a letter to the U.S. Marshals Service in New York, along with a copy of the Montana bench warrant and the waiver of extradition form signed by Cameron in New York on July 17, 2017, and requested the Marshals "consider this document as a detainer for Mr. Cameron. When Mr. Cameron has satisfied his Federal charges, please contact this agency and I will make arrangements to have Mr. Cameron transported back to Yellowstone County, Billings, MT."

¶9 The federal court held a status hearing on September 8, 2017. At that hearing, Cameron's defense attorney informed the court that "the government convinced Montana to delay picking up Mr. Cameron" until the federal matter was resolved. Cameron's

defense attorney also requested additional time to review a plea agreement offered by the government in the federal case, so the court set another status hearing. On April 17, 2018, Cameron was indicted by a federal grand jury for failing to register as a sex offender after traveling from Montana to New York, in violation of 18 U.S.C. § 2250(a).

¶10 Cameron remained in the county jail in New York until the summer of 2019. The federal court released him on June 6, 2019, without being tried or convicted, apparently because Cameron had already been in custody for the range provided by federal sentencing guidelines for his federal charge. Cameron was not released from jail in New York, however, because he was still held on the active Montana warrant. The State, relying on the 2017 extradition waiver, recommenced extradition proceedings to bring Cameron back to Montana. Cameron was served with a copy of the bench warrant on June 21, 2019. Cameron appeared by video for his initial appearance on the petition to revoke and bench warrant on June 25, 2019, nearly two years after he was first arrested in New York on the warrant. Cameron informed the District Court at this hearing he would be representing himself in this matter. Cameron's federal charge was dismissed, pursuant to Fed. R. Crim. P. 48(a), by order of the U.S. District Court on July 3, 2019. Cameron personally appeared in the District Court on July 29, 2019.

¶11 The District Court held additional hearings over the next few months, and Cameron repeatedly challenged the District Court's jurisdiction. A revocation hearing was ultimately held on November 11, 2019. At the start of the hearing, the District Court addressed Cameron's motions challenging the court's jurisdiction and orally denied the motions. The court then proceeded to the revocation hearing, where it heard testimony

from probation and parole officer Mattie Yedinak and Cameron. The District Court found Cameron had violated the conditions of his probation. The court then held a dispositional hearing on December 2, 2019, at which time it revoked Cameron's prior sentence and imposed a sentence of 2 years and 322 days DOC, along with 197 days of credit for time served—18 days between July 8 and July 26, 2017, and 179 days between June 6 and December 2, 2019.

¶12 Cameron appeals. Additional facts will be discussed as necessary below.

## STANDARD OF REVIEW

¶13 This Court exercises plenary review of constitutional questions, including whether a probationer's right to due process has been violated. *State v. Edmundson*, 2014 MT 12, ¶ 12, 373 Mont. 338, 317 P.3d 169 (citing *State v. Triplett*, 2008 MT 360, ¶ 13, 346 Mont. 383, 195 P.3d 819).

## DISCUSSION

¶14 *Whether the State's two-year delay in bringing Cameron to Montana to appear before a judge in his revocation proceeding violated Cameron's right to due process.*

¶15 Cameron represented himself at the District Court, and repeatedly raised the issue of the District Court's jurisdiction over him and irregularities in the extradition and federal proceedings which may have violated his right to due process. Represented by counsel on appeal, Cameron specifically asserts his right to due process was violated by the lengthy delay between his July 8, 2017 arrest in New York on the Montana warrant and his initial appearance before a Montana judge nearly two years later on June 25, 2019. The State contends Cameron's right to due process was not violated and he suffered no prejudice.

We agree with Cameron that the extremely long delay in this case violated Cameron's right to due process.

¶16 The State filed the petition to revoke at issue in this matter on April 14, 2017. Based on the petition, the District Court then issued a bench warrant for Cameron's arrest on April 17, 2017, pursuant to § 46-18-203(1), MCA, which allows a judge to "issue an arrest warrant directing any peace officer or a probation and parole officer to arrest the offender" and bring them before the court. Under Montana law, an offender with an outstanding petition for revocation must be brought before the judge "[w]ithout unnecessary delay and no more than 60 days after arrest," to be advised of the allegations of the petition, the opportunity to appear and present evidence on their own behalf, the opportunity to question adverse witnesses, and the right to be represented by counsel at the revocation hearing. Section 46-18-203(4), MCA.

¶17 Cameron asserts he suffered "unnecessary delay" when the State did not transport him to Montana for his initial appearance for nearly two years after he was arrested on the Montana warrant in New York. The State contends there was no unnecessary delay because Cameron was served with the warrant on June 21, 2019, and had his initial appearance only four days later. The State's assertion is both in contrast to the position it took at the District Court, where it recognized Cameron was arrested pursuant to the warrant on July 8, 2017,[3] and internally inconsistent with its own briefing, where it again recognizes that, if we were to ultimately decide there was no due process violation in this

---

[3] Among other examples, in the State's Response to Defendant's Motion to Vacate it noted "the Defendant was arrested in New York state in July 2017 on the warrant in this matter[.]"

8

case, Cameron would be entitled to credit for time served starting on July 8, 2017, the date of his arrest in New York, through July 26, 2017, the date of Cameron's federal court appearance. The State further recognizes Cameron would be entitled to credit for time served beginning on June 6, 2017, the date Cameron was released by the federal court. By the State's own admissions in this case, Cameron was being held on the Montana warrant as far back as July 8, 2017. "Judicial estoppel binds the State to its judicial admissions and prevents the State from taking a position 'inconsistent with previously made declarations in a subsequent action or proceeding.'" *State v. Jackson*, 2007 MT 186, ¶ 13, 338 Mont. 344, 165 P.3d 321 (quoting *Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 15, 307 Mont. 45, 36 P.3d 408). We reject the State's arguments that any calculations regarding the "unnecessary delay" in this case begin on June 21, 2019, rather than July 8, 2017, and because we find Cameron's right to due process was violated, it is not necessary to calculate any credit Cameron would be due for time served.

¶18 "The Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution protect the substantive and procedural rights of persons faced with deprivation of life, liberty or property by the government. Revocation of a suspended or deferred sentence can adversely implicate a probationer's liberty interests as seriously as the original determination of guilt." *State v. Finley*, 2003 MT 239, ¶ 29, 317 Mont. 268, 77 P.3d 193. An offender in a probation revocation proceeding, which is a civil proceeding, is not entitled to the full range of constitutional protections available to a person first charged with a crime, because probation "revocation deprives an individual not of absolute liberty, but only of the

9

'conditional liberty' that depends upon adherence to established parole restrictions." *State v. Koon*, 2017 MT 283, ¶ 16, 389 Mont. 322, 405 P.3d 1254 (citations omitted). A defendant's right to a speedy trial does not apply in the context of a probation revocation. *Koon*, ¶ 16 (citing *Edmundson*, ¶ 16).

¶19 "An offender is entitled to the protections of due process, including written notice of the alleged violation, disclosure of the evidence against him or her, the opportunity to be heard and to present evidence, the right to confront witnesses, the right to a neutral arbiter, and the right to receive a written statement of the evidence relied upon and the reason for the revocation." *Edmundson*, ¶ 16 (citing *Finley*, ¶ 31). Aside from those specific guarantees, "due process is ultimately measured by the fundamental fairness of the proceeding." *Edmundson*, ¶ 17 (citing *State v. West*, 2008 MT 338, ¶ 32, 346 Mont. 244, 194 P.3d 683). We consider the due process implications of a particular revocation proceeding on a case-by-case basis. *Koon*, ¶ 17 (citing *West*, ¶ 32). We consider the totality of the circumstances in such a review. *Edmundson*, ¶ 17. In a non-exhaustive list, we have previously held that a "reviewing court should consider the delay in serving the warrant; the State's diligence; the reasons for the delay; the conduct of the probationer; whether the State knows the location of the probationer; and any actual prejudice that resulted." *Koon*, ¶ 17 (citing *West*, ¶ 34).

¶20 We turn now to whether, under the specific facts of this case, Cameron received a fundamentally fair proceeding which comported with his constitutional right to due process. We conclude that he did not.

¶21 In analyzing the delay in serving the warrant, we recognize the District Court issued the bench warrant on April 17, 2017, and Cameron was arrested in New York on July 8, 2017. This delay was caused by Cameron absconding from supervision and returning to New York. After his arrest, Cameron was then held on the Montana warrant in county jails in New York until being returned to Montana on June 21, 2019, when he was, finally, served with the warrant. Though he was not "served" with the warrant at the time of his arrest in New York, the Montana warrant allowed New York to imprison Cameron; begin fugitive from justice proceedings; bring Cameron before a state court judge, where he waived his right to contest his extradition back to Montana; and continue to hold Cameron in jail after both New York's fugitive from justice proceeding was dismissed in 2017 and the federal court released him on June 6, 2019. But for the Montana warrant, New York state could not have imprisoned Cameron during those periods.

¶22 The State concedes it "knew where Cameron was as of July 2017," but contends its delay in returning him to Montana was not the result of a lack of diligence because "the record shows that the State was diligent in its efforts to bring Cameron back when it believed it had the authority to do so." Our review of the record shows that, whether through indifference or a lack of diligence on the part of the State, Cameron's right to due process was violated by "unnecessary delay" in receiving an initial appearance on the bench warrant. The State's primary argument that it proceeded diligently to return Cameron to Montana was that it either miscommunicated with, or was misinformed by, federal prosecutors.

11

¶23 After being arrested in New York on the Montana warrant, Cameron faced fugitive from justice proceedings in New York state court. In those proceedings, Cameron waived his extradition back to Montana before a New York state judge on July 17, 2017. As Montana prepared to extradite Cameron back to the state, a U.S. Marshal applied for, and was granted by a U.S. Magistrate, a writ of *habeas corpus ad prosequendum* to allow the federal government to take temporary custody of Cameron for the purpose of bringing him to federal court. Pursuant to that writ, Cameron appeared in federal court on July 26, 2017. The government, at that hearing, noted Montana was set to extradite Cameron in "two days." The federal court, the government, and Cameron's federal defender all recognized Cameron was only before the court at that time due to the writ and would be returned to state custody following the hearing. The federal court noted Cameron could request to remain in federal custody, and the court would sign an order if all parties agreed, to address his federal charges instead of being returned to Montana if he wished. Cameron was then returned to state custody. Cameron never requested to remain in federal custody or address his federal charges before his Montana charges. In the days following the July 26, 2017 hearing, the State canceled its request to transport Cameron back to Montana; the New York state court dismissed the fugitive from justice proceedings; and the State sent a letter to the U.S. Marshals Service in New York, along with a copy of the Montana bench warrant and the waiver of extradition form signed by Cameron in New York on July 17, 2017, and requested the Marshals consider the document as a detainer on Cameron.

¶24 The State admits it previously "believed the federal case took precedence over the revocation and the State could not bring Cameron back until his federal case was

12

completed." It now appears to concede Montana never lost "primary custody" of Cameron during the time he was incarcerated in New York. "When an accused is transferred pursuant to a writ of habeas corpus ad prosequendum he is considered to be 'on loan' to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly. Failure to release a prisoner does not alter that 'borrowed' status, transforming a state prisoner into a federal prisoner." *Thomas v. Brewer*, 923 F.2d 1361, 1367 (9th Cir. 1991) (quoting *Crawford v. Jackson*, 589 F.2d 693, 695 (D.C. Cir. 1978)). Still, the State contends Cameron's due process rights were not violated by Montana allowing Cameron's federal case to proceed—for nearly two years—before returning Cameron to Montana for his initial appearance on the bench warrant.

¶25 In considering the State's diligence and the reasons for the delay, *Koon*, ¶ 17, we are not persuaded by the State's argument that it proceeded diligently or that the reasons for the delay are acceptable. The State claims "miscommunication" and "misinformation" from federal prosecutors led it to erroneously believe Cameron was in federal custody on his federal charges as of July 26, 2017, following his arraignment in federal court. Cameron was clearly not in federal custody, as the federal court specifically noted Cameron was being returned to state custody following the hearing, and Cameron was only "borrowed" by the federal government for the July 26, 2017 hearing. *See Thomas*, 923 F.2d at 1367.[4] The State contends it was "unaware" of the discussion of Cameron's custody

---

[4] Accordingly, the Interstate Agreement on Detainers does not apply in this case, because Cameron was held as a pretrial detainee and "a writ of habeas corpus *ad prosequendum* is not a detainer" for the purposes of the IAD. *United States v. Mauro*, 436 U.S. 340, 361, 98 S. Ct. 1834, 1848 (1978).

at the July 26, 2017 federal court hearing, and notes "the district court was not presented with the entire court record from Cameron's federal case[.]" We find these claims only bolster Cameron's argument the State was not diligent and failed to present satisfactory reasons for the delay in this case. In explaining why it believed the federal case took precedence over the previously-pending Montana case, the State writes the "record is not clear about who contacted the State, but the State was led to believe a federal detainer had been put on Cameron." Such a claim is remarkable on its face as a federal detainer would be documented, and the only document purporting to place Cameron into federal custody was the government "borrowing" Cameron for an arraignment pursuant to the writ of *habeas corpus ad prosequendum*, before returning him immediately after to state custody. The State must do more to clarify the status of a prisoner beyond taking the apparent word of an unknown source that a federal detainer existed before allowing a prisoner held on a Montana warrant to languish in New York county jails for nearly two years.

¶26 We turn now to analyzing other considerations in determining whether Cameron's right to due process was violated: Cameron's conduct; whether the State knew his location; and any actual prejudice that resulted. *Koon*, ¶ 17. The State did not know where Cameron was between the time of the issuance of the bench warrant on April 17, 2017, and his arrest in New York on July 8, 2017, due to Cameron absconding from supervision and returning to New York. After July 8, 2017, however, the State knew exactly where Cameron was— in jail in New York and held there pursuant to this State's warrant. The State asserts Cameron suffered no prejudice by having his initial appearance in the revocation proceeding delayed for nearly two years. We disagree.

14

¶27 "Unnecessarily delaying an initial appearance before a judge, where the duty of the court is to advise the defendant of his right to counsel 'shocks the concept of fundamental fairness and due process.'" *State v. Gatlin*, 2009 MT 348, ¶ 22, 353 Mont. 163, 219 P.3d 874 (quoting *Fitzpatrick v. Crist*, 165 Mont. 382, 387, 528 P.2d 1322, 1325 (1974)). "The individual circumstances of each case will determine whether a delay is unreasonable," and, though the length of the delay is not the only consideration, we do consider the length of the delay in determining whether due process has been violated. *Edmundson*, ¶ 17 (citations omitted). Here, the State, whether through purposeful action, indifference, or a lack of diligence, delayed Cameron's initial appearance for nearly two years—22 months longer than the maximum time period prescribed by § 46-18-203(4), MCA, for an initial appearance on an outstanding petition for revocation—even though it had primary custody of Cameron and he had waived extradition. Cameron's federal case was ultimately dismissed by the government, without trial or conviction, after approximately 23 months— he was not serving time on a federal sentence and, due to the *Coonan* Order, he never received a federal bail hearing. He was then returned to Montana to begin his revocation proceedings nearly two years after he was first arrested in New York. Such a delay, when combined with the State's insufficient reasons for that delay, did not provide Cameron with a fundamentally fair proceeding, and therefore violated his right to due process. *Edmundson*, ¶ 17 (citing *West*, ¶ 32).

¶28 When the fundamental fairness of the proceedings has been tainted such that a defendant's right to due process has been violated, it is appropriate to vacate a conviction and/or sentence and dismiss the charges. *See Gatlin*, ¶ 23. Typically, such a dismissal for

15

"unnecessary delay" in providing an initial appearance on a criminal charge would be without prejudice. *See State v. Strong*, 2010 MT 163, ¶ 19, 357 Mont. 114, 236 P.3d 580.[5] We have recognized, however, that dismissal with prejudice for such delays may be warranted in some circumstances. *See Strong*, ¶ 20. The facts of this case are one such circumstance. As opposed to the "unnecessary delay" in appearing on a criminal charge as in *Gatlin* and *Strong*, here Cameron faced unnecessary delay in appearing on the State's petition to revoke. After being left in New York for nearly two years, Cameron was finally transported to Montana where his revocation proceedings began. After ultimately being found in violation of his probation, Cameron then did not even receive full credit for the 23 months he spent in custody in New York (on the authority of the Montana warrant) and was sentenced to nearly three years at DOC. Dismissing this case without prejudice would simply allow the already-delayed process of revocation based on the State's April 14, 2017 petition to begin again. Under the circumstances here, it is appropriate to vacate the revocation disposition and dismiss the State's April 14, 2017 petition to revoke with prejudice. Cameron's underlying sentence will remain, and if he violates the terms of that sentence, the State may again file a petition to revoke.

**CONCLUSION**

¶29　The State violated Cameron's right to due process by failing to bring him before a judge to answer his revocation proceedings for nearly two years. Accordingly, this matter

---

[5] *Strong* involved "unnecessary delay" in providing a defendant with an initial appearance after filing criminal charges, in violation of § 46-7-101(1), MCA, rather than an initial appearance on a probation revocation petition. *Strong*, ¶¶ 9-10.

16

is remanded to the District Court to vacate the revocation sentence and dismiss the State's petition to revoke with prejudice.

¶30  Reversed and remanded.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON