No. 96-051

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

       Plaintiff and Respondent,

  v.

MARTIN C. MOORMAN,

       Defendant and Appellant.

APPEAL FROM:   District Court of the Twentieth Judicial District,
              In and for the County of Lake,
              The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Jeffrey T. Renz, Montana Defender Project,
              Missoula, Montana

       For Respondent:

              Honorable Joseph P. Mazurek, Attorney General;
              Patricia Jordan, Assistant Attorney General,
              Helena, Montana

              Deborah Kim Christopher, County Attorney,
              Polson, Montana

FILED

NOV 21 1996

Filed: *Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  September 26, 1996

         Decided:  November 21, 1996

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Martin Moorman was convicted and sentenced by the Twentieth Judicial District Court, Lake County, for robbery and was designated a dangerous offender. Moorman contested his dangerous offender designation in a petition for post-conviction relief, which the District Court denied. Moorman appeals the denial of his petition for post-conviction relief. We affirm.

The following dispositive issues are raised on appeal:

1.   Did the District Court properly apply the procedural bar rule of § 46-21-105(2), MCA, to dismiss Moorman's petition for post-conviction relief?

2.   Did the District Court possess jurisdiction pursuant to § 46-18-404(3), MCA (1981) (repealed 1995), upon revocation of Moorman's suspended sentence, to continue his dangerous offender designation which it had imposed in the original sentence?

BACKGROUND

Moorman was convicted of robbery in Lake County on November 10, 1982. He had a previous record of thefts and burglaries as well as drug- and alcohol-related offenses, and a 1977 conviction for assault on a police officer. On November 17, 1982, the District Court sentenced Moorman to a term of twenty years in the Montana State Prison, with fifteen years suspended. The court also designated Moorman a dangerous offender for purposes of parole eligibility.

Moorman was released on parole on September 17, 1985, and was subject to the terms and conditions established by the Montana

2

Department of Institutions. After he failed to make his initial and monthly reports to his parole officer, the State petitioned to revoke his suspended sentence on June 28, 1990. Moorman fled to California and had to be extradited. At a revocation hearing held on December 19, 1990, Moorman admitted to violating the conditions of his suspended sentence. On December 27, 1990, the District Court revoked Moorman's suspended sentence, and sentenced him to serve twenty years in prison, with all but five years and twenty days suspended. The court credited Moorman with five years and twenty days for time already served, and also ordered him to be placed on parole with the same conditions as his original 1982 sentence.

On November 4, 1991, Moorman's parole officer filed a parole violation report stating that Moorman had stopped reporting to the parole office and had moved without obtaining permission. The State petitioned to revoke Moorman's suspended sentence on November 5, 1991. Moorman was extradited from Texas and admitted to the violations. On March 9, 1992, the District Court granted the State's petition and sentenced Moorman to fifteen years at the Montana State Prison, but suspended the sentence on the condition, among others, that he serve ninety days in jail.

In September 1992, Moorman moved to Washington and failed to report to his parole officer. Moorman's parole officer filed a third parole violation report on September 11, 1992. He alleged that Moorman had violated three conditions of his parole because he had failed to report to the parole office since May, had failed to

pay restitution, and had failed to obtain chemical dependency counseling. The State again petitioned to revoke Moorman's suspended sentence. Moorman waived extradition from Washington and admitted to the parole violations.

On July 7, 1994, the District Court revoked Moorman's suspended sentence and ordered him to serve fifteen years in the Montana State Prison with no time suspended. The court credited Moorman with 126 days for time already served but ordered that he not receive credit for any other time due to his parole violations. In its judgment and commitment, the court ordered:

> that the Defendant shall continue to be designated a dangerous offender for purposes of his parole under MCA 46-18-404. The Court finds that due to the Defendant's uncontrolled behavior at the time of the offense, and his unwillingness to abide by the terms of his probation, that the Defendant represents a substantial danger to other persons and society, due to the likelihood that he will further victimize persons by illegal activity.

Moorman did not appeal the legality of his sentence pursuant to §§ 46-20-101 through -104, MCA. Instead, he petitioned the Sentence Review Division of the Supreme Court of Montana to review his dangerous offender designation pursuant to §§ 46-18-901 through -905, MCA. The Sentence Review Division denied the petition, ruling that the District Court had considered the underlying requirements to impose the dangerous offender designation.

Moorman then petitioned the District Court for relief pursuant to the Montana Post-Conviction Hearing Act contained at §§ 46-21-101 through -203, MCA (1993). He argued: (1) that the District Court engaged in an ex post facto application of § 46-18-404(4), MCA (1993) (repealed 1995); (2) that his dangerous offender

4

designation terminated upon his release in 1985; (3) that the dangerous offender designation imposed in 1994 was not supported by substantial evidence; and (4) that the District Court violated § 46-18-102(3)(b), MCA (1993), when it failed to state its reasons for imposing the most severe sentence. Moorman also claimed that the District Court lacked jurisdiction to designate him a dangerous offender.

The District Court denied Moorman's petition for post-conviction relief, concluding that the issues raised in his petition were procedurally barred by § 46-21-105(2), MCA. The court also found that it had imposed Moorman's dangerous offender designation pursuant to § 46-18-404(3), MCA (1981) (repealed 1995). Therefore, the court found no ex post facto application of § 46-18-404(4), MCA (1993) (repealed 1995). Finally, the court found that the July 7, 1994 judgment and third revocation of Moorman's suspended sentence continued the dangerous offender designation for the reasons contained in the judgment. Moorman appeals from the District Court's denial of his petition for post-conviction relief.

1. Did the District Court properly apply the procedural bar rule of § 46-21-105(2), MCA, to dismiss Moorman's petition for post-conviction relief?

The standard of review for denial of post-conviction relief is whether substantial evidence supports the findings and conclusions of the district court. Walker v. State (1993), 261 Mont. 1, 6, 862 P.2d 1, 4.

5

Moorman argues that the procedural bar rule contained at § 46-21-105(2), MCA, does not apply to jurisdictional issues, and that an application to the Sentence Review Division should be considered an appeal under § 46-21-105(2), MCA. It is undisputed that Moorman did not file a direct appeal to the Montana Supreme Court challenging his conviction, his dangerous offender designation, or any of his three subsequent sentence revocations.

A.    Jurisdictional Issues

Section 46-21-105(2), MCA, states: "When a petitioner has been afforded a direct appeal of the petitioner's conviction, grounds for relief that could reasonably have been raised on direct appeal may not be raised in the original or amended petition." The purpose of this waiver provision is to preserve the integrity of the trial and direct appeal and to prevent abuse of the post-conviction relief process. State v. Gorder (1990), 243 Mont. 333, 335, 792 P.2d 370, 371.

Moorman cites Smith v. State (1980), 186 Mont. 52, 606 P.2d 153, as authority for his argument that the procedural bar rule does not apply to jurisdictional issues. However, the procedural bar rule was not raised by the State nor addressed by this Court in Smith because subsection (2) was not added to § 46-21-105, MCA, until 1981. In Smith we held that, at a revocation hearing, the sentencing judge lacked statutory authority to designate a defendant as dangerous, where the dangerous offender designation had not been made in the original sentence. Smith, 606 P.2d at 155. As the State correctly argues in its brief, Moorman's

6

situation differs from Smith. Unlike the court in Smith, the District Court designated Moorman as a dangerous offender in his original 1982 sentence.

Moorman also cites State v. Akers (1938), 106 Mont. 43, 74 P.2d 1138, in support of his jurisdictional argument. An objection that a court lacks subject matter jurisdiction is never waived and may be raised at any stage of the proceedings. Akers, 74 P.2d at 1145. "Jurisdiction is the power to hear and determine the particular action or proceeding as well as to make such orders and render such judgment therein as the law authorizes in the class of actions or proceedings to which it belongs." State v. District Court of Eighteenth Judicial Dist. (1966), 147 Mont. 263, 267, 410 P.2d 933, 935.

Montana has not directly answered the issue raised by Moorman. However, other jurisdictions with post-conviction relief statutes similar to Montana's have. In Maxfield v. State (Idaho App. 1985), 700 P.2d 115, the defendant petitioned for post-conviction relief. The Court of Appeals of Idaho declined to review several claims, holding that post-conviction relief cannot be used to correct mere errors or irregularities in trial court proceedings which are not jurisdictional and which, at the most, render a judgment merely voidable. Maxfield, 700 P.2d at 121 (citing 39 Am.Jur.2d, HABEAS CORPUS § 30 (1968)). However, the Idaho court explained an exception to the general rule. Post-conviction relief is available "to cure fundamental errors occurring at the trial which affect either the jurisdiction of the court or the validity of the

7

judgment, even though these errors could have been raised on appeal." Maxfield, 700 P.2d at 121.

In State v. Ohnmacht (Iowa 1983), 342 N.W.2d 838, 843, the Iowa Supreme Court reviewed a jurisdictional issue which had not been previously raised on direct appeal. The court held that "[v]oid sentences are not subject to the usual concepts of waiver, whether from a failure to seek review or other omissions of error preservation." Ohnmacht, 342 N.W.2d at 843.

Moorman's jurisdictional argument challenges the District Court's authority to impose his dangerous offender designation. If the District Court lacked the statutory authority to impose the dangerous offender designation on Moorman, then Moorman's sentence is void. Therefore, we hold that the procedural bar rule contained at § 46-21-105(2), MCA, does not apply in a petition for post-conviction relief when the sentencing court lacked subject matter jurisdiction to impose the particular sentence.

The remainder of Moorman's claims contained in his petition for post-conviction relief reasonably could have been raised on direct appeal. Therefore, these claims are procedurally barred from consideration in a post-conviction proceeding. See §§ 46-20-104, 46-21-105(2), MCA; Petition of Slice (1995), 271 Mont. 337, 338, 896 P.2d 1125, 1126. The District Court properly applied the procedural bar rule when it declined to address the issues that Moorman raised for the first time in his petition for post-conviction relief.

B.    Sentence Review

As an additional argument, Moorman also asserts that an application to the Sentence Review Division of the Supreme Court of Montana initiated pursuant to § 46-18-903, MCA, should be considered a "direct appeal" according to § 46-21-105(2), MCA.  Therefore, he argues, the District Court should have considered the merits of the arguments he made for the first time in his petition for post-conviction relief.

In interpreting a statute, we look first to the plain meaning of the words it contains.  Weere v. David (1996), 275 Mont. 376, 385, 913 P.2d 625, 631.  When the language of the statute is clear and unambiguous, the statute speaks for itself and we will not resort to other means of interpretation.  Weere, 913 P.2d at 631.

This Court has previously explained the difference between an application to the Sentence Review Division and a direct appeal.  Section 46-18-903, MCA, allows a defendant to apply to the Sentence Review Division to challenge the inequity or disparity of his sentence.  State v. Evans (1990), 247 Mont. 218, 231, 806 P.2d 512, 520.  The Sentence Review Division may increase or decrease the original sentence.  Section 46-18-904, MCA.  However, the Sentence Review Division does not review errors of law resulting in an illegal sentence.  State v. Simtob (1969), 154 Mont. 286, 288, 462 P.2d 873, 874.  Sentence reviews are final.  Section 46-18-905, MCA.

In contrast, a direct appeal to the Montana Supreme Court, initiated pursuant to §§ 46-20-101 through -105, MCA, allows a

9

defendant to challenge the legality of a sentence. This Court only reviews sentences to determine if they are legal. State v. Lloyd (1984), 208 Mont. 195, 199, 676 P.2d 229, 231.

Moorman's argument fails to distinguish between the different purposes of post-conviction relief and sentence review. Post-conviction relief provides defendants with a "procedure to address claims that would have been raised by means of a petition for writ of habeas corpus or a petition for writ of error coram nobis." Renz, Post-Conviction Relief in Montana, 55 Mont. L. Rev. 331, 336 (1994). On the other hand, the Sentence Review Division reviews the equity of a sentence.

The Montana Post-Conviction Relief Hearing Act, when read in conjunction with § 46-20-104, MCA, and § 46-18-903, MCA, differentiates a direct appeal from an application for sentence review. A defendant may appeal his conviction to the Montana Supreme Court pursuant to § 46-20-104, MCA. A defendant may also apply for a review of his sentence with the Sentence Review Division pursuant to §§ 46-18-901 through -905, MCA. However, nowhere in the language of §§ 46-18-901 through -905, MCA, does the word "appeal" appear.

The plain language of § 46-21-105(2), MCA, is clear and unambiguous. Therefore, we hold that "an application for review of the sentence" as contained in § 46-18-903(1), MCA, is not a "direct appeal" within the context of § 46-21-105(2), MCA. Because Moorman did not directly appeal his claimed errors to this Court, he is procedurally barred from raising them in a petition for post-

10

conviction relief. Section 46-21-105(2), MCA. Moorman had the opportunity in 1982, 1990, 1992, and 1994 to appeal his sentence, subsequent revocations of the sentence, and the dangerous offender designation to this Court. He chose not to do so. He cannot apply to the Sentence Review Division, fail to raise issues there, and preserve those issues in a petition for post-conviction relief.

Moorman argues even though he did not object to his dangerous offender designation at the district court level, that the plain error doctrine applies. In State v. Finley (Mont. 1996), 915 P.2d 208, 215, 53 St.Rep. 310, 315, we discussed the circumstances under which we will review issues of plain error. We held that we would review claimed errors that implicate a criminal defendant's fundamental constitutional rights under the plain error rule where failing to do so may result in a manifest miscarriage of justice, leave the question of the fundamental fairness of the proceedings unsettled, or compromise the integrity of the judicial process. Finley, 915 P.2d at 215. The plain error rule is of limited application and is to be used sparingly. State v. Arlington (1994), 265 Mont. 127, 152, 875 P.2d 307, 322. We decline to extend the common law rule of plain error to cases such as Moorman's, where the defendant had the opportunity to challenge his dangerous offender designation on direct appeal but chose not to.

With the exception of the jurisdictional issue, the District Court properly applied the procedural bar rule of § 46-21-105(2), MCA, to dismiss Moorman's petition for post-conviction relief. Therefore, we decline to address whether Moorman's dangerous

11

offender designation terminated in 1985, whether his 1994 dangerous offender designation is supported by substantial evidence, or whether the District Court failed to adequately state its reasons for imposing the most severe sentence on Moorman when it revoked his suspended sentence for the third time in 1994.

However, because we conclude that the District Court improperly applied the procedural bar rule when it declined to address Moorman's jurisdictional argument, we address that issue.

2.   Did the District Court possess jurisdiction pursuant to § 46-18-404(3), MCA (1981) (repealed 1995), upon a revocation of Moorman's suspended sentence, to continue his dangerous offender designation which it had imposed in the original sentence?

Moorman argues that the District Court lacked jurisdiction to continue his dangerous offender designation when it revoked his suspended sentence in 1994.  The State contends that the court had no alternative but to continue the conditions of Moorman's original sentence.  We agree with the State.

District courts have broad discretion in their sentencing decisions.  State v. Alexander (1994), 265 Mont. 192, 203, 875 P.2d 345, 352.  However, a district court has no power to impose a sentence in the absence of specific statutory authority.  State v. Hatfield (1993), 256 Mont. 340, 346, 846 P.2d 1025, 1029.

In reviewing the District Court's jurisdiction to continue Moorman's dangerous designation, we look to § 46-18-404, MCA (1981) (repealed 1995), because it was the statute in effect at the time

12

the crime was committed. See State v. Azure (1978), 179 Mont. 281, 282, 587 P.2d 1297, 1298.

At the time of Moorman's initial sentencing, § 46-18-404, MCA (1981) (repealed 1995), did not allow a district court in a revocation proceeding to add new terms or conditions to a defendant's original sentence. Finley, 915 P.2d at 221. A district court could not impose a dangerous offender designation upon revocation of a suspended sentence where the original sentence was silent on the issue or designated the defendant as nondangerous. Smith, 606 P.2d at 154-55; Petition of Arledge (1988), 232 Mont. 450, 756 P.2d 1169, 1170.

In Smith, the original judgment was silent as to whether the defendant was designated as dangerous or nondangerous. We found that by implication the district court had not found that the defendant was a substantial danger to the community. Here, however, when Moorman was originally sentenced in 1982, the sentencing court specifically designated him as a dangerous offender. The District Court, under the 1981 version of § 46-18-203, MCA, had the authority "to revoke the suspension or impose sentence and order the person committed." It did not have the authority to modify the sentence. Therefore, Moorman's original dangerous designation remained a part of his sentence upon all subsequent revocations of his suspended sentence.

We hold that the District Court possessed statutory authority, and thus had jurisdiction, upon a revocation of Moorman's suspended sentence, to continue his dangerous offender designation imposed in

13

the original sentence. Substantial evidence supports the District Court's findings and conclusions that Moorman's claims are prohibited by the procedural bar rule, and that Moorman was properly designated as a dangerous offender. The District Court's order denying Moorman's petition for post-conviction relief is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

14