**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RUSTY ROGERS,
 *Petitioner-Appellant*,

v.

MIKE FERRITER; MARTIN FRINK,
 *Respondents-Appellees*.

No. 13-35790

D.C. No.
2:12-cv-00013-DLC

OPINION

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief District Judge, Presiding

Argued and Submitted
May 7, 2015—Portland, Oregon

Filed August 5, 2015

Before: William A. Fletcher and Andrew D. Hurwitz,
Circuit Judges, and Michael M. Baylson,[*] Senior District
Judge.

Opinion by Judge W. Fletcher

---

[*] The Honorable Michael M. Baylson, Senior District Judge for the U.S. District Court for the Eastern District of Pennsylvania, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel reversed the district court's judgment dismissing a Montana state prisoner's habeas corpus petition as untimely and remanded for further proceedings.

The panel held that the prisoner's application for review of his sentence was "pending" for purposes of 28 U.S.C. § 2244(d)(2) during the time that the Sentence Review Division (SRD) of the Montana Supreme Court held it in abeyance so he could seek other state collateral review, and AEDPA's statute of limitations was therefore tolled after the SRD held the prisoner's application in abeyance but before he filed for other state collateral relief.

### COUNSEL

David F. Ness (argued), Assistant Federal Defender, Anthony R. Gallagher, Federal Defender, Federal Defenders of Montana, Great Falls, Montana, for Petitioner-Appellant.

Jonathan M. Krauss (argued), Assistant Attorney General, Timothy C. Fox, Attorney General, Office of the Montana Attorney General, Helena, Montana, for Respondents-Appellees.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

W. FLETCHER, Circuit Judge:

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state prisoners must file federal petitions for habeas corpus within one year of the date on which the challenged conviction becomes final. 28 U.S.C. § 2244(d)(1). That limitations period is tolled while a petitioner's "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2). The dispositive issue in this case is whether a Montana prisoner's application for review of his sentence was "pending" during the time that the Sentence Review Division of the Montana Supreme Court held it in abeyance so he could seek other state collateral review. We hold that it was.

## I. Background

### A. Collateral Review in Montana

This case arises out of Montana's dual-track system for collateral review of criminal sentences. On one track, Montana permits prisoners to seek post-conviction collateral relief — typically referred to as "post-conviction relief" — from both the conviction and sentence. Mont. Code Ann. § 46-21-101. The state district court that imposed a criminal sentence has the power "to vacate, set aside, or correct the sentence." *Id.* § 46-21-101(1). A petition for post-conviction relief "may be filed at any time within 1 year of the date that the conviction becomes final." *Id.* § 46-21-102(1).

On the other track, Montana permits prisoners to seek modification of their sentences from the Sentence Review Division ("SRD"). The SRD is a subdivision of the Montana Supreme Court consisting of three district court judges appointed by the chief justice. *See* Mont. Code Ann. § 46-18-901; Charles S. Jordan, *Montana's Sentence Review Division: A Twenty Year Overview*, 49 Mont. L. Rev. 369, 371 (1988). The SRD "has the authority . . . to affirm, decrease, increase or otherwise alter any sentence, subject to those limitations applicable to the original sentencing judge." Jordan, *supra*, at 372; *see also* Mont. Code Ann. § 46-18-904. The SRD is authorized to "adopt any rules that will expedite its review of sentences." Mont. Code Ann. § 46-18-901(4).

The SRD's "primary objective . . . is to provide for uniformity in sentencing when appropriate and to ensure that the interest of the public and the defendant are adequately addressed by the sentence." Mont. Sentence Rev. Div. R. 16. The SRD must ensure that a sentence is based on (1) "[t]he crime committed"; (2) "[t]he prospects of rehabilitation of the offenders"; (3) "[t]he circumstances under which the crime was committed"; (4) and "[t]he criminal history of the offender." *Id.* A sentence is "presumed correct" and "will not be reduced or increased unless it is deemed clearly inadequate or excessive." *Id.* R. 17.

The rules governing the timing for filing an application for SRD review are somewhat complicated. The one relevant statute provides that a petitioner may file an application for SRD review within sixty days of the date the sentence was imposed. Mont. Code Ann. § 46-18-903(1). An SRD rule provides that if an application is filed more than sixty days after sentence is imposed, the SRD "shall thereafter promptly notify the defendant that the application is untimely and

request the defendant file within thirty (30) days a statement of reasons why the Sentence Review Division should hear the matter." Mont. Sentence Rev. Div. R. 7. The rule specifies that a direct appeal of the sentence is a sufficient "reason" for a late filing: "The Sentence Review Division will hear late applications which have been caused by the taking of an appeal to the Montana Supreme Court." *Id.* Rule 8 further provides:

> When there is a pending appeal or request for post-conviction relief, the application for Sentence Review should not be filed until such time as the petition for post-conviction relief or the appeal has been determined, at which time the defendant shall be given sixty (60) days in which to file for review of the sentence.

*Id.* In other words, filing an application within sixty days of the imposition of sentence is not a prisoner's only route to SRD review. A prisoner may also seek SRD review within sixty days of the determination of a direct appeal, or within sixty days of the determination of a petition for post-conviction review.

## B. State Proceedings

Petitioner Rusty Rogers was convicted in a state jury trial in Montana of two counts of felony sexual assault. *State v. Rogers*, 168 P.3d 669, 671 (Mont. 2007). On February 2, 2006, the state district court sentenced Rogers to "twenty-year concurrent prison terms on both counts, with ten years suspended." *Id.* at 674. Rogers filed an application for SRD review five days later.

On September 11, 2007, the Montana Supreme Court affirmed Rogers's convictions and sentences on direct appellate review. *Id.* at 678. Rogers did not seek certiorari, and his convictions became final ninety days later. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). On January 3, 2008, after Rogers's convictions had become final, the SRD notified Rogers that it would hold a hearing to review his sentence on February 7.

On January 18, the SRD sent Rogers another letter, explaining that it had learned from Rogers's father that Rogers was in the process of filing a petition for state post-conviction relief. The SRD explained its standard practice:

> Pursuant to Rule 7 of the Rules of the Sentence Review Division of the Supreme Court of Montana, please be advised that all appeals must be completed prior to a sentence review hearing.
>
> If you are in fact filing a post conviction relief, your application for sentence review will be held in abeyance pending the outcome of your post conviction and notification to the Sentence Review Division within sixty (60) days from the date in which your postconviction is decided.
>
> Please reply as soon as possible to the address above as to whether you are proceeding with a post conviction or other type of an appeal. If you are, I will continue your hearing pending the outcome of your post conviction or other type of an appeal . . . .

Rogers replied in a handwritten letter on January 25, stating that he had a new lawyer "looking over my case so that he can file for the next level of the appeal process." Rogers asked the SRD to cancel his February 7 hearing and push back his sentence review process "as far as possible until all of my appeal options have been exhausted."

On January 29, the SRD issued an Order to Continue Sentence Review Hearing. The SRD ordered "that the sentence review hearing . . . is hereby vacated, and the Application for Review of Sentence will be held in abeyance pending notification to the Sentence Review Division within 60 days of the decision of the Defendant's final appeal." On January 31, the SRD wrote to Rogers, informing him, "You will need to notify the Sentence Review Division within sixty (60) days from the date in which your post conviction is decided if you are still interested in pursuing a review of your sentence with the Sentence Review Division. If you fail to notify this office within the time allowed, your file will not be reactivated."

Rogers filed a petition for state post-conviction relief on November 28, 2008, 303 days after the SRD ordered his application for sentence review held in abeyance. The state district court denied post-conviction relief. The Montana Supreme Court affirmed the denial on May 17, 2011. *Rogers v. State*, 253 P.3d 889 (Mont. 2011). Rogers did not notify the SRD within sixty days of the Supreme Court's decision. Consequently, the SRD did not reactivate his sentence review application.

## C. Federal Proceedings

On March 9, 2012, Rogers filed a federal habeas petition, 297 days after the Montana Supreme Court affirmed the denial of post-conviction relief. The parties agree that Rogers's federal habeas petition is untimely absent statutory tolling of the 303-day period while his application for SRD review was held in abeyance.

The magistrate judge concluded that Rogers's application for SRD review was a "properly filed application for State . . . collateral review" within the meaning of § 2244(d)(2), and that AEDPA's statute of limitations was tolled when Rogers applied for sentence review by the SRD. However, he concluded that Rogers's application was no longer "pending" as soon as the SRD held it in abeyance. He concluded that the limitations period was therefore not tolled during the 303 days from January 29, 2008, when the SRD ordered that Rogers's application be held in abeyance, to November 28, 2008, when Rogers filed his petition for state post-conviction relief.

The magistrate judge acknowledged the definition of "pending" provided by the Supreme Court in *Carey v. Saffold*, 536 U.S. 214 (2002). In *Saffold*, the Court held that "an application is pending as long as the ordinary state collateral review process is 'in continuance' — *i.e.*, 'until the completion of' that process." *Id.* at 219–20. But the magistrate judge viewed *Saffold* as inapposite because the question there was whether a petition was pending during "gaps" between successive filings in state court. The magistrate judge pointed out that "gap tolling" is not at issue in this case. Instead, the issue is whether a petition is pending while it is held in abeyance so that a prisoner can file a

separate petition for other collateral relief. The magistrate judge explained that if the limitations period were tolled whenever a prisoner applies for SRD review within 60 days of sentencing, and the SRD then holds the application in abeyance until all other proceedings are completed, the tolled period could be extremely long. He wrote that if tolling were allowed in this circumstance,

> every Montana prisoner qualified for sentence review would be well-advised to apply for [sentence review] within sixty days of sentencing, whether review was really desired or not. Doing so would, in effect, increase the federal limitations period to at least two years and two months: one year after the conclusion of direct review to prepare a state postconviction petition, sixty days thereafter to decide whether to go ahead with sentence review, and then one more year after that to prepare a federal petition — all under the time-shelter of a sentence review application filed sixty days after sentencing, and all without ever intending actually to face the judges of the Sentence Review Division.

The magistrate judge concluded that the "time should be tolled under § 2244(d)(2) while Rogers' application for sentence review was active, but not while it was inactive." On this view of the matter, AEDPA's limitations period was not tolled during the 303-day period between January 29, 2008, when the SRD ordered that Rogers's application be held, and November 28, 2008, when Rogers filed his petition for post-conviction relief. The district court agreed with, and

adopted in full, the conclusions of the magistrate judge, and dismissed Rogers's petition as untimely.

## II.  Standard of Review

We review de novo whether the district court erred in dismissing a habeas petition as untimely.  *Banjo v. Ayers*, 614 F.3d 964, 967 (9th Cir. 2010).  The petitioner bears the burden of proving the limitations period was tolled.  *Id.*

## III.  Discussion

Although AEDPA's one-year statute of limitations "begins to run when the state prisoner's conviction becomes final," the limitations period is tolled while a "prisoner's 'properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'"  *Id.* at 968 (quoting 28 U.S.C. § 2244(d)(2)).  The dispositive question on appeal is whether AEDPA's statute of limitations was tolled after the SRD held Rogers's application in abeyance but before Rogers filed for other state collateral relief.  The key to answering this question is the Supreme Court's interpretation of "pending."

The Supreme Court construed "pending," as used in § 2244(d)(2), in *Carey v. Saffold*. California had argued that "an application for state collateral review is not 'pending' in the state courts during the interval between a lower court's entry of judgment and the timely filing of a notice of appeal (or petition for review) in the next court.  Its rationale [was] that, during this period of time, the petition is not under court consideration." 536 U.S. at 219 (citation omitted).  The Court rejected the argument that an application for state collateral

relief is "pending" only when it is actively under consideration by a state court.

The Court explained that interpreting "pending" to refer only to applications actively under consideration was "not consistent with that word's ordinary meaning." *Id.* The Court relied on dictionary definitions:

> The dictionary defines "pending" (when used as an adjective) as "in continuance" or "not yet decided." *Webster's Third New International Dictionary* 1669 (1993). It similarly defines the term (when used as a preposition) as "through the period of continuance . . . of," "until the . . . completion of." *Id.* That definition, applied in the present context, means that an application is pending as long as the ordinary state collateral review process is "in continuance" — *i.e.*, "until the completion of" that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains "pending."

*Id.* at 219–20.

Thus, under *Saffold*, an application for state collateral relief is pending as long as it is "in continuance." We believe that *Saffold* answers the question before us. Rogers's sentence review application was "in continuance" so long as the SRD held it in abeyance. His application for sentence review was held in abeyance by the SRD on January 29, 2008, and did not "achieve[] final resolution" until sixty days

after the Montana Supreme Court affirmed the denial of post-conviction relief.

Our decision in *Welch v. Carey*, 350 F.3d 1079 (9th Cir. 2003) (en banc), is not to the contrary. In that case, the habeas petitioner "filed a state habeas petition . . . raising one ground, lost, and pursued it no further. Four and a half years later, petitioner filed a second state habeas petition — this time in the California Supreme Court — raising different grounds." *Id*. at 1080. We held that "as a matter of federal law, that petitioner had no application for post-conviction relief 'pending' during the four and a half year gap." *Id.* "During that period of inaction, all [the petitioner] had under state law was an opportunity to seek relief of which he did not take advantage." *Id.* at 1083.

The contrast between *Welch* and this case is obvious. *Welch* involved a petitioner who filed one petition for state habeas relief, lost, did not appeal, and filed a separate state habeas petition four years later. By contrast, Rogers filed two overlapping petitions. His application to the SRD was not an "opportunity to seek relief of which he did not take advantage." Rather, it was an ongoing application for sentence review that the SRD, following its normal practice, chose to hold in abeyance while he pursued other collateral relief.

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court discussed the relationship between AEDPA's limitations period and the bar on mixed petitions. The Court was concerned that "petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in

federal district court, and the district court dismisses it . . . after the limitations period has expired, this will likely mean the termination of any federal review." *Id.* at 275. To avoid this consequence, the Court approved a "'stay-and-abeyance' procedure," authorizing district courts to "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Id.*

We have described the legal effect of a district court order holding a petition in abeyance: "*Rhines* carved out an exception to [the] total exhaustion rule, allowing a mixed petition to remain *pending* in federal court under limited circumstances." *King v. Ryan*, 564 F.3d 1133, 1140 (9th Cir. 2009) (emphasis added). This "exception eliminates entirely any limitations issue with regard to the originally unexhausted claims, as the claims remain pending in federal court throughout." *Id.*; *see also EPA v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584, 1597 n.11 (2014) (noting that other challenges to a regulation "were not consolidated with this proceeding, and they remain pending (held in abeyance for these cases) in the Sixth and D.C. Circuits"); *Woodbury v. United States*, 313 F.2d 291, 297 (9th Cir. 1963) (noting that an appellant "also has a case pending in the Court of Claims, the case being held in abeyance pending our decision").

The federal procedure, in which a federal court holds in abeyance a federal habeas petition while a state court addresses unexhausted state post-conviction claims, is analogous to the SRD's procedure, in which the SRD holds in abeyance an application while a state court addresses undecided state post-conviction claims. We see no reason why, if a federal habeas petition is "pending," a state

application for sentencing review is not "pending" in analogous circumstances.

The magistrate and district judges who carefully considered this case were appropriately concerned about the practical problem of applying *Saffold*'s construction of the word "pending" to Montana's dual-track system of collateral review. We have two answers to their concern.

First, we are not free to ignore the established meaning of a word based on policy concerns. The Court recently emphasized this in *Kellogg Brown & Root Services., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970 (2015), in which it construed "pending" as used in the False Claims Act ("FCA"). Under the FCA's first-to-file bar, if a party brings a *qui tam* action, "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). The petitioners argued that pending was "used as a short-hand for the first filed action." *Kellogg*, 135 S. Ct. at 1979. In their view, "the first-filed action remains 'pending' even after it has been dismissed, and it forever bars any subsequent related action." *Id.*

The Court rejected the petitioners' "peculiar" interpretation. *Id.* at 1978. Relying on dictionary definitions, as it had in *Saffold*, the Court held that pending "means '[r]emaining undecided; awaiting decision,'" *id.* (quoting *Black's Law Dictionary* 1314 (10th ed. 2014)), and "'not yet decided: in continuance: in suspense,'" *id.* (quoting *Webster's Third New International Dictionary* 1669 (1976)). After an action was dismissed, it was no longer pending. *Id.*

The Court recognized that its construction of "pending" "would produce practical problems." *Id.* at 1979. The Court noted that "if the first-to-file bar is lifted once the first-filed action ends, defendants may be reluctant to settle such actions for the full amount that they would accept if there were no prospect of subsequent suits asserting the same claims." *Id.* Nevertheless, the Court held that while FCA "provisions present many interpretive challenges . . . it is beyond our ability in this case to make them operate together smoothly like a finely tuned machine." *Id.* Despite the practical problems that might follow, the Court said it had "no reason not to interpret the term 'pending' in the FCA in accordance with its ordinary meaning." *Id.* at 1978.

Second, as the State conceded at oral argument, the practical problem is "easily fixed." If the SRD is faced with an early-filed application like Rogers's, it has a choice. It may hold the application in abeyance, with the consequence we see here. Or it may dismiss the application without prejudice, leaving the prisoner to reapply, under its Rule 7, within sixty days after the direct appeal has been determined or within sixty days after a petition for post-conviction review has been determined. No new state statute would be required. The SRD does not even need to issue new rules. All the SRD must do, the State conceded at argument, is change "how they issue their orders, or word their orders."

## Conclusion

We **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.