**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHARLES IVAN BRANHAM,
*Petitioner-Appellant*,

v.

STATE OF MONTANA; PATRICK MCTIGHE,
*Respondents-Appellees*,

and

JIM SALMONSEN,
*Respondent.*

No. 19-35829

D.C. No.
9:18-cv-00059-
DLC-KLD

OPINION

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted July 10, 2020
Portland, Oregon

Filed May 6, 2021

Before: Michael R. Murphy,[*] Mark J. Bennett, and
Eric D. Miller, Circuit Judges.

Opinion by Judge Miller

**SUMMARY**[**]

**Habeas Corpus**

The panel affirmed the district court's judgment dismissing as barred by the one-year statute of limitations a Montana state prisoner's habeas corpus petition brought pursuant to 28 U.S.C. § 2254.

Under 28 U.S.C. § 2244(d), the one-year period begins to run upon "the conclusion of direct review" of the conviction, and it is suspended during the pendency of any "properly filed application for State post-conviction or other collateral review." The panel held that a proceeding in the Sentence Review Division of the Montana Supreme Court is collateral review, not direct review, which rendered the petition in this case untimely.

---

[*] The Honorable Michael R. Murphy, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Palmer A. Hoovestal (argued), Hoovestal Law Firm PLLC, Helena, Montana, for Petitioner-Appellant.

Mardell Ployhar (argued), Assistant Attorney General; Timothy C. Fox, Attorney General; Office of the Attorney General, Helena, Montana; for Respondents-Appellees.

**OPINION**

MILLER, Circuit Judge:

A prisoner who seeks a federal writ of habeas corpus to review a state-court conviction must satisfy a one-year statute of limitations. 28 U.S.C. § 2244(d). The one-year period begins to run upon "the conclusion of direct review" of the conviction, and it is suspended during the pendency of any "properly filed application for State post-conviction or other collateral review." *Id.* We are asked to decide whether a proceeding in the Sentence Review Division of the Montana Supreme Court constitutes direct review or collateral review. We conclude that it is collateral review.

I

On the night of December 10, 2009, Charles Branham fatally stabbed Michael Kinross-Wright. Branham admitted the stabbing but claimed that he acted in self-defense. A Montana jury found Branham guilty of mitigated deliberate homicide, and he was sentenced to 40 years of imprisonment without eligibility for parole. The Montana Supreme Court affirmed. *State v. Branham*, 269 P.3d 891, 897 (Mont. 2012). Branham did not file a petition for a writ of certiorari in the United States Supreme Court.

About 11 months after the time for filing a petition for a writ of certiorari expired, Branham filed a petition for state post-conviction relief, arguing that he had received ineffective assistance of counsel. *See* Mont. Code Ann. § 46-21-101 *et seq.* The state district court denied his petition, and the Montana Supreme Court affirmed. *Branham v. State*, 390 P.3d 162 (Mont. 2017) (unpublished table decision).

About two weeks later, Branham filed an application for review of his sentence by the Sentence Review Division of the Montana Supreme Court. *See* Mont. Code Ann. § 46-18-901 *et seq*. The Sentence Review Division affirmed the sentence, concluding that it was neither "clearly inadequate [n]or clearly excessive."

More than six months later, Branham filed a petition for a writ of habeas corpus in federal district court. He alleged that both trial and appellate counsel were unconstitutionally ineffective and that he was deprived of due process by various procedural errors at trial and in post-conviction proceedings.

A magistrate judge recommended that the petition be dismissed as time barred. The magistrate judge applied 28 U.S.C. § 2244(d)(1), which provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." As relevant here, the period begins to run upon "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). But the statute also provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted." *Id.* § 2244(d)(2).

The magistrate judge determined that the statute of limitations began to run after the expiration of the period for seeking certiorari to review the Montana Supreme Court's 2012 decision affirming Branham's conviction. The magistrate judge treated both Branham's petition for post-conviction relief and his application for review by the Sentence Review Division as forms of "State post-conviction or other collateral review," which meant that the statute of limitations was tolled during those proceedings. Once the proceedings concluded, Branham had 23 days remaining in which to file, but he did not file until several months later, making his petition untimely.

The district court adopted the magistrate judge's recommendation and dismissed the petition. The court noted that "[b]ecause Branham does not dispute [the] actual calculation of the various dates involved, but rather disputes when the statute of limitations period began, the narrow issue is whether Montana's [Sentence Review Division] proceeding is a form of direct or collateral review." The court stated that our decision in *Rogers v. Ferriter*, 796 F.3d 1009 (9th Cir. 2015), "largely resolves the issue." In the court's view, although the decision in *Rogers* "did not directly address whether Montana's [Sentence Review Division] process is direct or collateral, it was a basic assumption of the case that it was a collateral proceeding." The court added that because review in the Sentence Review Division "may occur after a post-conviction review it is necessarily collateral."

The district court granted a certificate of appealability.

II

The timeliness of Branham's habeas petition—and, thus, the resolution of this appeal—depends on how to

characterize Montana's Sentence Review Division proceeding. If that proceeding is a form of "direct review" under section 2244(d)(1)(A), then the one-year statute of limitations began to run upon its conclusion, making Branham's petition timely. If it is instead a form of "State post-conviction or other collateral review" under section 2244(d)(2), then the statute of limitations was tolled while that proceeding was ongoing but did not reset upon its conclusion, making Branham's petition untimely. Reviewing de novo, *McMonagle v. Meyer*, 802 F.3d 1093, 1096 (9th Cir. 2015) (en banc), we agree with the district court that the proceeding is a form of collateral review.

At the outset, we conclude that our precedent does not resolve the issue before us. The district court relied on our decision in *Rogers*, in which we considered whether a Sentence Review Division proceeding was "pending," for purposes of tolling under section 2244(d)(2), during the time that the Sentence Review Division held it in abeyance so that the petitioner could pursue state post-conviction relief. 796 F.3d at 1010. In describing the issue, we referred to the Sentence Review Division as part of "Montana's dual-track system for collateral review of criminal sentences." *Id.* Thus, as the district court correctly observed, "a basic assumption" of our decision was that a proceeding in the Sentence Review Division was collateral. But no party in *Rogers* suggested that the proceeding might constitute direct review, and the issue of how to characterize it was not before us. "Judicial assumptions concerning . . . issues that are not contested are not holdings," so the assumption reflected in *Rogers* is not binding here. *FDIC v. McSweeney*, 976 F.2d 532, 535 (9th Cir. 1992) (omission in original) (quoting *United States v. Daniels*, 902 F.2d 1238, 1241 (7th Cir. 1990)); *accord Summers v. Schriro*, 481 F.3d 710, 712–13 (9th Cir. 2007).

Because our precedent does not answer the specific question presented, we turn to more general guidance on the difference between direct review and collateral review. The Supreme Court has held that "'collateral review' means a form of review that is not part of the direct appeal process." *Wall v. Kholi*, 562 U.S. 545, 552 (2011); *see also id.* (noting that a "collateral attack" is "[a]n attack on a judgment in a proceeding *other than a direct appeal*" (alteration and emphasis in original) (quoting Black's Law Dictionary (9th ed. 2009))). To illustrate the distinction, the Court has observed that "habeas corpus is a form of collateral review," as are *coram nobis* proceedings and proceedings under 28 U.S.C. § 2255. *Id.*

In *Summers*, a case that preceded *Kholi*, we noted that section 2244(d) uses "the phrase 'direct review' rather than the phrase 'direct appeal,'" and we criticized the suggestion that "the phrase 'direct review' excludes any form of review that is not a 'direct appeal.'" 481 F.3d at 713. On its broadest reading, that language would be irreconcilable with the statement in *Kholi* that "'collateral review' means a form of review that is not part of the direct appeal process," 562 U.S. at 552, as well as with our subsequent en banc decision in *McMonagle*, in which we said that "[i]t is when a direct appeal becomes final that [the] 1-year statute of limitations begins running," 802 F.3d at 1098. But our holding in *Summers* was much more limited: We held that the label a State attaches to a proceeding is not controlling, and that "direct review" includes a proceeding that, although not called an "appeal," is nevertheless "the functional equivalent of a direct appeal." 481 F.3d at 716 (quoting *State v. Ward*, 118 P.3d 1122, 1126 (Ariz. Ct. App. 2005)); *see also Carey v. Saffold*, 536 U.S. 214, 223 (2002) ("[F]or purposes of applying a federal statute that interacts with state procedural rules, we look to how a state procedure functions, rather than

the particular name that it bears."). That holding is consistent with *Kholi* and *McMonagle*, and it guides our analysis here.

A review of our cases and those of the Supreme Court reveals three factors that are relevant to determining whether a proceeding is functionally "part of the direct appeal process" or is instead a form of collateral review. *Kholi*, 562 U.S. at 552.

First, we consider how the proceeding is characterized under state law. Of course, "[b]ecause the question of what constitutes direct review is intertwined with the question of when a decision on direct review becomes final, it makes sense to decide both questions by reference to uniform federal law." *Summers*, 481 F.3d at 714. And as we have already explained, the label a State attaches to a proceeding is not determinative. *Id.* But how the State "characterize[s]" the proceeding "may affect" our analysis insofar as it explains how the proceeding "functions in the [state] criminal justice system." *Id.*; *see McMonagle*, 802 F.3d at 1097 ("[W]e look to [state] law to determine when direct review of a [state] conviction concludes.").

Second, we consider the timing of the proceeding. In assessing the finality of federal convictions, the Supreme Court has explained that "[f]inality attaches" once the Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). And "[i]n construing the similar language of § 2244(d)(1)(A)," the Court has identified "no reason to depart from this settled understanding, which comports with the most natural reading of the statutory text." *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). That understanding is important here because once finality attaches, "the conclusion of direct review occurs." *Id.*; *see Gonzalez v.*

*Thaler*, 565 U.S. 134, 150 (2012). A distinguishing feature of collateral review, therefore, is that it "necessarily follows direct review." *Lopez v. Wilson*, 426 F.3d 339, 351 (6th Cir. 2005) (en banc) (citation omitted).

In addition, direct review is generally "governed by short, definite deadlines." *Summers*, 481 F.3d at 717. That, too, is a significant feature of direct review for purposes of the federal habeas statute of limitations. The Supreme Court has observed that the statute of limitations is aimed at "safeguard[ing] the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lend[ing] finality to state court judgments within a reasonable time." *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007) (quoting *Day v. McDonough*, 547 U.S. 198, 205–06 (2006)); *see also Rhines v. Weber*, 544 U.S. 269, 277 (2005). Those aims are achieved by using the completion of direct review as the triggering event for the start of the limitations period. By contrast, while direct review "generally is constrained by tight, non-waivable time limits," the time limits governing collateral review "are generally looser and waivable for good cause." *Lopez*, 426 F.3d at 351 (citation omitted).

Third, we consider whether the proceeding takes the place of an appeal in the State's system. In *Kholi*, the Court suggested that it could "imagine an argument" that the proceeding at issue—a motion for a reduction of sentence under Rhode Island Rule of Criminal Procedure 35—"is in fact part of direct review" because it is the only opportunity for defendants to "raise any challenge to their sentences." 562 U.S. at 555 n.3. We applied similar reasoning in *Summers*, concluding that a proceeding under Arizona Rule of Criminal Procedure 32 is a form of "direct review" because, for those defendants whose convictions rest on a

guilty plea, the proceeding represents "the only means available for exercising the constitutional right to appellate review" under Arizona law. 481 F.3d at 716 (quoting *Montgomery v. Sheldon*, 889 P.2d 614, 616 (Ariz. 1995)); *see id.* ("[A] Rule 32 proceeding is *the* appeal for a defendant pleading guilty." (emphasis in original) (quoting *Montgomery v. Sheldon*, 893 P.2d 1281, 1282 (Ariz. 1995))). A proceeding that substitutes for an appeal can be a form of direct review even if it is not called an "appeal."

III

With those principles in mind, we examine Montana's Sentence Review Division proceeding.

In Montana, the review of criminal sentences is bifurcated. The Montana Supreme Court "reviews sentences for legality—that is, whether the sentence is within the parameters of the sentencing statute," *Jordan v. State*, 194 P.3d 657, 661 (Mont. 2008), while the Sentence Review Division is charged with reviewing "the inequity or disparity of [a] sentence," *State v. Moorman*, 928 P.2d 145, 149 (Mont. 1996). The Sentence Review Division consists of three Montana district court judges designated by the Chief Justice of the Montana Supreme Court. Mont. Code Ann. § 46-18-901(1). Anyone sentenced to a term of imprisonment of one year or more may apply to the Sentence Review Division to review the sentence. *Id.* § 46-18-903(1).

As we next explain, the state-law characterization of a Sentence Review Division proceeding, the timing of the proceeding, and the relationship of the proceeding to other forms of review under Montana law all indicate that the proceeding is a form of collateral review. That conclusion comports with the decisions of courts that have examined similar systems in other States.

A

Montana law does not characterize a Sentence Review Division proceeding as part of the direct review process. First, Montana law provides that a petitioner seeking post-conviction relief may not raise "grounds for relief that were or could reasonably have been raised on direct appeal." Mont. Code Ann. § 46-21-105(2). The Montana Supreme Court has held that "an application for review of the sentence" by the Sentence Review Division is not a direct appeal for purposes of that statute. *Moorman*, 928 P.2d at 150. In reaching that conclusion, the court "explained the difference between an application to the Sentence Review Division and a direct appeal," emphasizing the limited nature of the Division's review. *Id.* at 149. *Moorman* demonstrates that Montana considers sentence review to be distinct from the direct review process.

Second, the Montana post-conviction relief statute provides that a decision becomes "final" for purposes of computing the deadlines for seeking relief "when the time for appeal to the Montana supreme court expires," or, "if an appeal is taken to the Montana supreme court," when the deadline for filing a petition for a writ of certiorari to the United States Supreme Court expires or when the United States Supreme Court issues its final order. Mont. Code Ann. § 46-21-102(1). The statute does not mention the Sentence Review Division. The Montana Supreme Court has therefore held that a conviction becomes "final" when the "time for appeal [to the Montana Supreme Court] expire[s]," despite a defendant's later application to the Sentence Review Division. *Sanchez v. State*, 86 P.3d 1, 3 (Mont. 2004); *see id.* at 1–2 (distinguishing between a "direct appeal" to the Montana Supreme Court and "sentence review" by the Division).

Branham challenges that interpretation of Montana law. He relies on a statement by the Montana Supreme Court in *Ranta v. State*, 958 P.2d 670, 678 (Mont. 1998), that "[w]ere the legislature to abolish the review division, the function of reviewing sentences on equitable grounds would . . . return to [the Montana Supreme] Court." But simply because the Montana Supreme Court reviewed equitable challenges to sentences in the past—and could potentially do so again in the future—does not change the reality that, at present, a prisoner must raise those challenges in a separate forum.

Branham also points to *Ranta*'s holding that the Montana Constitution gives a prisoner a right to counsel in the Sentence Review Division. *See* 958 P.2d at 676–77. But the Montana Supreme Court based that holding on its view that sentence review is "a critical stage of the proceedings against a defendant." *Id.* at 674. It expressly declined to hold that it "constitutes a first appeal provided as a matter of right." *Id.* at 677. Under Montana law, the proceeding is not a direct appeal.

B

The deadlines to apply for review by the Sentence Review Division also suggest that that proceeding is appropriately characterized as a form of collateral review. A prisoner seeking sentence review must apply within 60 days of the date the sentence was imposed, of the determination of an appeal to the Montana Supreme Court, or of the determination of a petition for post-conviction relief, whichever is latest. Mont. Code Ann. § 46-18-903(1); Mont. Sentence Rev. Div. R. 2. In addition, if the prisoner is unable to meet those deadlines and can show cause, the Sentence Review Division may "consider any late request for review of sentence and may grant or deny the request." Mont. Code Ann. § 46-18-903(3); Mont. Sentence Rev. Div. R. 7.

The timing rules are significant for two reasons. First, a prisoner can seek review by the Sentence Review Division *after* seeking Montana post-conviction relief, which everyone agrees is a form of collateral review. That alone suggests that sentence review is a form of collateral review. Collateral review, after all, "necessarily follows direct review." *Lopez*, 426 F.3d at 351 (citation omitted). Indeed, we are aware of no form of direct review that takes place after collateral review.

Second, as we observed in *Summers*, direct review is generally "governed by short, definite deadlines." 481 F.3d at 717. Because sentence review need not begin until after the conclusion of a direct appeal and a petition for post-conviction relief, it can take place years after conviction, even without the exercise of the Sentence Review Division's broad authority to "consider any late request." Mont. Code Ann. § 46-18-903(3). Such permissive deadlines are a characteristic of collateral review, not direct review.

## C

A Sentence Review Division proceeding does not take the place of an appeal under Montana law. To the contrary, a Montana prisoner who wishes to challenge the legality of a sentence has two alternatives to review by the Sentence Review Division. First, a prisoner can directly appeal to the Montana Supreme Court to challenge the constitutionality or legal sufficiency of the sentence. *See, e.g.*, *State v. Wardell*, 122 P.3d 443, 448–49 (Mont. 2005) (reviewing on direct appeal whether a sentence was "so disproportionate" or "excessive" that it violated the Eighth Amendment's prohibition against cruel and unusual punishment). Second, a prisoner may seek post-conviction relief. Mont. Code Ann. § 46-21-101(1). Although post-conviction relief "is not available to attack the validity of the . . . sentence," *id.* § 46-

22-101(2), the Montana Supreme Court has held that "an individual incarcerated pursuant to a facially invalid sentence" nonetheless "ha[s] the ability to challenge its legality," including, "for example, a sentence which either exceeds the statutory maximum for the crime charged or which violates [a] constitutional right." *Lott v. State*, 150 P.3d 337, 342 (Mont. 2006).

Branham observes that a Sentence Review Division proceeding is "the only opportunity a criminal defendant has to challenge an otherwise lawful sentence on *equitable* grounds." *Ranta*, 958 P.2d at 676 (emphasis added). He adds that he "could not have exhausted his state court remedies" without pursuing sentence review. But precisely because sentence review is limited to examining "the inequity or disparity of [a] sentence"—and "does not review errors of law"—it is unclear whether any claim advanced in the Sentence Review Division would even be cognizable on federal habeas review. *Moorman*, 928 P.2d at 149. In any event, "exhaustion and finality are distinct concepts," and sometimes exhaustion can require pursuing collateral review. *McMonagle*, 802 F.3d at 1098; *see Burger v. Scott*, 317 F.3d 1133, 1138 (10th Cir. 2003) ("Congress did not draft the federal limitations period to begin running only at the end of a particular state's exhaustion process."). In addition, to the extent that sentence review is equitable in nature, it resembles habeas corpus, which "is, at its core, an equitable remedy," *Schlup v. Delo*, 513 U.S. 298, 319 (1995), and which is also the archetypal example of collateral review, *Kholi*, 562 U.S. at 552.

D

Although we have found no decision addressing a state procedure precisely like Montana's sentence review, our conclusion is consistent with the decisions of other courts

that have examined similar state proceedings in which a prisoner can challenge the length of a sentence. When such a proceeding results in the vacatur of the sentence and imposition of a new sentence, then the statute of limitations will run anew from the imposition of the new judgment. *See Magwood v. Patterson*, 561 U.S. 320, 323–24 (2010); *Smith v. Williams*, 871 F.3d 684, 685–86 (9th Cir. 2017). But when it does not, the proceeding is generally characterized as collateral review and does not restart the limitations period. *See, e.g.*, *Mitchell v. Green*, 922 F.3d 187, 195–98 (4th Cir. 2019) ("[A] Maryland Rule 4-345 motion to reduce sentence 'is not part of the direct review process.'" (quoting *Kholi*, 562 U.S. at 555)); *Rogers v. Secretary, Dep't of Corr.*, 855 F.3d 1274, 1277 (11th Cir. 2017) (holding that a Florida Rule 3.800(c) motion to correct or reduce sentence "is an application for collateral review"); *Bridges v. Johnson*, 284 F.3d 1201, 1202 (11th Cir. 2002) ("[A]n application for sentence review is not a part of the direct appeal process under Georgia law."). We are aware of no authority treating a procedure similar to Montana's as a form of direct review that restarts the statute of limitations under section 2244(d).

**AFFIRMED**.